Filed 2/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B275509 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA092645) |
| v. | |
| MITCHELL ALEJANDRO GUTIERREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge. Affirmed in part, reversed in part and remanded with directions.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Mary Sanchez, Ryan M. Smith, and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Mitchell Alejandro Gutierrez appeals from the judgment entered after a jury convicted him of fleeing a police officer while driving recklessly, unlawful driving or taking a vehicle, driving under the influence of alcohol and hit-and-run driving. Gutierrez contends he was improperly convicted of felony vehicle theft and the offense should be reduced to a misdemeanor. He also contends the trial court committed prejudicial error by admitting evidence of his prior conviction for unlawful driving or taking a vehicle. Finally, Gutierrez asks us to review the sealed transcripts of the hearing regarding disclosure of the personnel file of the police officer involved in his pursuit and arrest to determine whether the court abused its discretion when it concluded there were no discoverable materials.

We reverse Gutierrez's felony conviction for unlawful driving or taking a vehicle (count 2), vacate his sentence in its entirety and remand for retrial on that count or resentencing. On remand the People will have the election of accepting a reduction of the felony conviction on count 2 to a misdemeanor or retrying count 2 as a felony. In all other respects we affirm Gutierrez's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Information*

Gutierrez was charged in an information with felony counts for fleeing a pursuing police officer while driving recklessly (Veh. Code, § 2800.2)[1] (count 1) and driving or taking a vehicle without the owner's consent after a prior conviction for the same or similar offense (§ 10851; Pen. Code, § 666.5) (count 2) and

---

[1] Statutory references are to this code unless otherwise stated.

misdemeanor counts for driving under the influence (DUI) of alcohol within 10 years of two other DUI offenses (§§ 23152, subd. (a), 23546) (count 3), driving with a blood alcohol content greater than or equal to .08% within 10 years of another DUI offense (§§ 23152, subd. (b), 23540) (count 4) and hit-and-run driving resulting in property damage (§ 20002, subd. (a)) (count 5). It was specially alleged as to count 2 that Gutierrez had previously been convicted of a felony violation of section 10851 and as to counts 3 and 4 that he had previously been convicted of one violation of section 23103, subdivision (a) (reckless driving), and one violation of section 23152, subdivision (b). Gutierrez pleaded not guilty and denied the special allegations.

2. *Evidence at Trial*

In June 2015 Gutierrez was in a relationship with Jorgann Gonzalez.[2] Gutierrez routinely drove Gonzalez's car, often taking her to work in the morning, keeping the car during the day, and picking her up in the evening. In early June 2015 Gonzalez was in a car accident, and her car was damaged. Her father rented a Nissan Altima for her to drive while her car was being repaired. Gonzalez was listed as an authorized driver on the car rental agreement. Gutierrez was not.

On the morning of June 26, 2015 Gutierrez drove Gonzalez to a doctor's appointment in the rental car. After the appointment the couple spent the day at Gutierrez's house. Around 6 p.m. Gutierrez told Gonzalez he was leaving and would return later. Approximately 30 minutes later Gonzalez realized

---

[2]     Gonzalez gave birth to Gutierrez's child the day after Gutierrez's arrest.

the rental car keys were not in her purse where she had left them and the car was gone. Gonzalez called Gutierrez and told him to bring the car back. He said he would.

Gutierrez returned approximately an hour later. He parked the rental car down the street from his house and got out, but left the engine running. Gonzalez came outside. As she approached the car, Gutierrez got back in and drove away. Gonzalez called Gutierrez approximately five times to tell him to bring the car back, but he did not answer his phone. Gonzalez testified she had not given Gutierrez permission to take the car that evening.

Around 10:45 p.m. Officer Atanacio Jimenez of the Gardena Police Department was patrolling in a marked police car. He noticed a vehicle fail to stop at a stop sign and turn the corner at a high rate of speed. The vehicle, which Jimenez later learned was being driven by Gutierrez, turned into an alley travelling approximately 15 miles per hour over the speed limit. Jimenez pursued the vehicle without turning on his patrol car's lights or siren and observed Gutierrez fail to stop at another stop sign, fail to stop at multiple red lights and drive on the wrong side of the road. At that point Jimenez activated his vehicle's lights and siren. Gutierrez did not pull over, instead proceeding through another stop sign without stopping. He continued driving over 40 miles per hour. Gutierrez then pulled into a parking lot and jumped out of the rental car while it was still moving. The car collided with a parked car. Gutierrez ran toward the rear entrance of an adjacent bar. Jimenez asked a bystander where Gutierrez had gone and was told Gutierrez ran into the bar. Jimenez broadcast the situation over the radio, and one of the responding officers arrested Gutierrez outside the front entrance

4

of the bar. Jimenez's patrol car was equipped with a dashboard camera, which was activated when Jimenez turned on the car's lights and siren. The video footage of the incident was played for the jury.

Gardena Police Officer Jaycon Sanchez responded to Officer Jimenez's broadcast call on June 26, 2015. When Sanchez arrived at the front entrance of the bar Gutierrez had entered, a woman outside the bar told him a man standing in front of the bar, later identified as Gutierrez, was the person he was pursuing. Sanchez testified Gutierrez appeared drunk. Gutierrez refused a field sobriety test. A breathalyzer test administered at the police station showed Gutierrez's blood alcohol level as .14 percent. Upon learning of the night's events, Gonzalez told police Gutierrez had stolen the car.

Gutierrez did not testify or present any witnesses in his defense.

3. *Jury Instructions and Closing Argument Regarding Unlawful Taking or Driving a Vehicle*

The court instructed the jury, pursuant to CALCRIM No. 1820, that to prove Gutierrez guilty of unlawfully taking or driving a vehicle in violation of section 10851, "the People must prove that: [¶] 1. The defendant took or drove someone else's vehicle without the owner's consent; [¶] AND [¶] 2. When the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time."[3] As part of

---

[3] The court continued with bracketed language from CALCRIM No. 1820, "Even if you conclude that the owner had allowed the defendant or someone else to take or drive the vehicle before, you may not conclude that the owner consented to the

CALCRIM No. 252, Union of Act and Intent, the court also instructed, to find a person guilty of the crime of driving or taking a vehicle without consent, "that person must not only intentionally commit the prohibited act or intentionally fail to do the required act, but must do so with a specific intent. . . . [¶] . . . [¶] The specific intent required for the crime of Driving or Taking a Vehicle Without Consent is the intent to deprive the owner of possession or ownership of the vehicle for any period of time."

In her closing argument following the court's instructions, the deputy district attorney reviewed the evidence showing that Gutierrez took and drove the rental car without the consent of either the rental car company, its owner, or Gonzalez, an authorized driver. She continued, "We know that [Gutierrez] took the car for an hour and a half the first time, and the second time he took the car for an hour and a half until he was spotted by Officer Jimenez. And as we know, [Gonzalez] testified that she kept calling the defendant, and he wouldn't answer. So it becomes clear the defendant intended to deprive [the rental car company] of possession of the car during the duration of the time that he was driving the vehicle."

### 4. *Jury Deliberations, Verdict and Sentencing*

The jury began deliberating on the afternoon of February 22, 2016. The next day the jury submitted a question to the court: "Do we consider [the rental car company] as the legal owner of the vehicle and that [Gonzalez] or her father cannot give permission to drive the car?" In response the court

---

driving or taking on June 26, 2015, based on that previous consent alone." (See § 10851, subd. (c).)

allowed counsel to argue their positions to the jury for five minutes each. The prosecutor again argued the rental car company was the legal owner of the vehicle and reiterated the testimony of the rental car company representative, who had stated only Gonzalez and her father had consent and authorization to drive the car. The prosecutor emphasized Gonzalez's testimony she had not given Gutierrez permission to drive the car on the evening of June 26, 2015. In rebuttal Gutierrez's counsel agreed the rental car company was the legal owner of the vehicle, but argued Gonzalez was still capable of giving Gutierrez permission to drive it. The rental contract, Gutierrez's counsel argued, did not prohibit Gonzalez or her father from giving another individual permission to drive the car; instead, it only affected Gonzalez and her father's liability should they do so. Gutierrez's counsel further argued Gonzalez had given Gutierrez permission to drive the car that evening and only claimed it was stolen to protect herself from liability for the damage.

Also on February 23, 2016 the jury asked to rewatch the dashboard camera footage and hear readback of the testimony of Gonzalez and Officer Sanchez. After the testimony was read back, the jury resumed deliberations.

On the morning of February 24, 2016 the jury reported it had a verdict. The jury found Gutierrez guilty on all counts charged. The verdict form for count 2 specifically identified the charge as a felony violation of section 10851. At that point Gutierrez waived a jury trial as to his prior convictions and admitted all three convictions alleged in the information.

On March 24, 2016 the trial court sentenced Gutierrez to an aggregate state prison term of four years eight months, plus a

consecutive term of 544 days to be served in any penal institution.[4] The court also imposed statutory fees, fines and assessments.

## DISCUSSION

1. *Gutierrez's Felony Conviction for Unlawful Driving or Taking a Vehicle Must Be Reversed Because It May Have Been Based on a Legally Incorrect Theory of Guilt*

Gutierrez contends his conviction for unlawful driving or taking a vehicle was for a form of vehicle theft and, pursuant to Proposition 47, his felony conviction must be reduced to a misdemeanor because the People failed to prove the stolen vehicle was worth more than $950. The Attorney General initially argued Proposition 47 does not apply to violations of section 10851. However, after briefing in this case was completed, the Supreme Court in *People v. Page* (2017) 3 Cal.5th 1175 (*Page*) held Proposition 47 applies to violations of section 10851 in some instances.[5] The Attorney General now argues Gutierrez has forfeited his argument and, in any event, has failed to carry his burden to show the value of the vehicle. Both Gutierrez and the Attorney General misperceive the nature of error committed and the appropriate remedy.

a. *Vehicle Code section 10851*

---

[4] The court imposed the high term of four years on count 2, plus consecutive terms of eight months (one-third the middle term of two years) on count 1; 364 days on count 4; and 180 days on count 5. Pursuant to Penal Code section 654 the court stayed the sentence on count 3.

[5] Prior to setting the case for oral argument, we invited the parties to submit supplemental letter briefs addressing the effect of *Page* on the issues raised in the appeal.

8

Section 10851, subdivision (a), provides, "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense . . . ."  By its terms, section 10851 is a "wobbler" offense that may be punished as either a felony or a misdemeanor.  (See § 10851, subd. (a); *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974, fn. 4 [listing § 10851, subd. (a), as a statute that provides for "alternative felony or misdemeanor punishment"].)[6]

As the Supreme Court has observed, section 10851, subdivision (a), "'proscribes a wide range of conduct.'"  (*People v. Garza* (2005) 35 Cal.4th 866, 876.)  A person can violate section 10851 by "[u]nlawfully *taking* a vehicle with the intent to permanently deprive the owner of possession."  (*Garza*, at p. 871.)  Section 10851 can also be violated "when the driving occurs or continues after the theft is complete" (referred to by the Supreme

---

[6]      Although section 10851 provides a violation may be punished as either a felony or a misdemeanor, Penal Code section 666.5 states a person previously convicted of a felony violation of that statute or felony grand theft of an automobile who is subsequently convicted of one of those offenses "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment."  As discussed, Gutierrez was charged under Penal Code section 666.5, admitted his prior felony conviction for violating section 10851 and was sentenced to the high term under Penal Code section 666.5 rather than under the felony provisions of section 10851.

Court as "posttheft driving") or by "'driving [a vehicle] with the intent only to temporarily deprive its owner of possession (i.e. joyriding).'"  (*Garza,* at pp. 871, 876.)

Taking a vehicle with the intent to permanently deprive the owner of possession is a form of theft, and a defendant convicted of violating section 10851 with such an intent has suffered a theft conviction.  (*Page, supra,* 3 Cal.5th at pp. 1183, 1186-1187; *People v. Garza, supra,* 35 Cal.4th at p. 871.)  On the other hand, posttheft driving and joyriding are not forms of theft; and a conviction on one of these bases is not a theft conviction.  (*Page,* at p. 1183 ["[r]egardless of whether the defendant drove or took the vehicle, he [or she] did not commit auto theft if he [or she] lacked the intent to steal"]; *Garza*, at p. 871.)

> b. *Proposition 47 applies to theft convictions under Vehicle Code section 10851*

In November 2014 the voters passed Proposition 47, part of The Safe Neighborhoods and Schools Act, effective November 5, 2014, designed to reduce the punishment for certain drug and theft offenses by reclassifying them from felonies to misdemeanors.  (See Pen. Code, § 1170.18; *Harris v. Superior Court* (2016) 1 Cal.5th 984, 992.)  Among other things, Proposition 47 reclassified a variety of grand theft crimes to petty theft offenses when the value of the money, labor, real or personal property taken did not exceed $950.  (See Pen. Code § 490.2, subd. (a) ["[n]otwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950)

shall be considered petty theft and shall be punished as a misdemeanor"].)[7]

Following passage of Proposition 47, courts of appeal disagreed whether Penal Code section 490.2 applied to vehicle theft under section 10851, that is, whether a theft conviction under section 10851 could continue to be punished as a felony regardless of the value of the vehicle or whether it must be punished as a misdemeanor if the vehicle's value did not exceed $950.  The Supreme Court resolved the issue in *Page*, holding, "By its terms, Proposition 47's new petty theft provision, section 490.2, covers the theft form of the Vehicle Code section 10851 offense." (*Page*, *supra*, 3 Cal.5th at p. 1183.)  Thus, after the passage of Proposition 47, "obtaining an automobile worth $950 or less by theft constitutes petty theft under section 490.2 and is punishable only as a misdemeanor, regardless of the statutory section under which the theft was charged." (*Page,* at p. 1187.)

      c. *The trial court failed to instruct on the elements*
         *necessary for a felony theft conviction under*
         *section 10851*

The parties agree, as held in *Page,* after Proposition 47 a defendant can be convicted of felony vehicle theft under either section 10851 or Penal Code section 487, subdivision (d)(1), only if the vehicle was worth more than $950.  As a result, Gutierrez argues he "is entitled to resentencing under [Penal Code] section 1170.18, subdivision (a)," because there was no evidence

---

[7]    Proposition 47 also authorized those convicted and serving sentences for since-reclassified felony offenses to petition for recall of sentence and resentencing under certain circumstances. (Pen. Code, § 1170.18.)

11

presented at trial of the rental car's value. The Attorney General argues Gutierrez forfeited this argument because it was not raised in the trial court and, even if not forfeited, asserts the burden was on Gutierrez to prove the value of the vehicle.

The parties have mistakenly conflated the retrospective and prospective applications of Proposition 47. As discussed, Penal Code section 1170.18 allows individuals who had already been convicted of felonies at the time of Proposition 47's enactment to petition for resentencing if the felony had been reclassified as a misdemeanor. When such a petition has been filed, the defendant bears the burden of proving he or she is eligible for retrospective relief. (*People v. Romanowski* (2017) 2 Cal.5th 903, 916.) However, Gutierrez had not even committed the crime charged at the time Proposition 47 went into effect. Thus, relief under Penal Code section 1170.18 is unavailable to him. The issue in this case is not whether Gutierrez should be resentenced under Penal Code section 1170.18, but whether he was properly convicted of a felony theft violation of section 10851. He was not.

At the time Gutierrez took the rental car from Gonzalez, he was entitled to the benefit of Proposition 47. In other words, at the time of his arrest in 2015, theft of a vehicle worth $950 or less was "punishable only as a misdemeanor." (*Page, supra,* 3 Cal.5th at p. 1187.) Thus, to obtain a felony conviction for vehicle theft, the People were required to prove as an element of the crime that the rental car he took was worth more than $950. (*Id.* at p. 1183; *In re D.N.* (2018) 19 Cal.App.5th 898, 901; *People v. Van Orden* (2017) 9 Cal.App.5th 1277, 1288, review granted June 14, 2017, S241574; see *People v. Sherow* (2015) 239 Cal.App.4th 875, 879 [noting under reduced penalties of Proposition 47 shoplifting "is

now a misdemeanor unless the prosecution proves the value of the items stolen exceeds $950"].)  As Gutierrez argues, because the People failed to present any evidence at trial regarding the value of the rental car, the felony conviction for violating section 10851, if predicated on vehicle theft, cannot stand.

Although the record cannot support a guilty verdict for felony vehicle theft, the problem with Gutierrez's felony conviction is not the sufficiency of the evidence but jury instructions that failed to adequately distinguish among, and separately define the elements for, each of the ways in which section 10851 can be violated.[8]  As *Page* made clear, when a violation of section 10851 is "based on theft," a defendant can be convicted of a felony only if the vehicle was worth more than $950.  (*Page, supra*, 3 Cal.5th at pp. 1187-1188.)  It is also necessary to prove the vehicle was taken with an intent to permanently deprive the owner of its possession—"a taking with

_____

[8]     Gutierrez did not object to the instructions on unlawful driving or taking, and the Attorney General contends any claim of error directed to those instructions has been forfeited. However, when an instruction allegedly affects the substantial rights of the defendant, it is reviewable even in the absence of an objection.  (Pen. Code, § 1259; see, e.g., *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012 [failure to object to instruction does not forfeit issue on appeal when alleged error concerns elements of offense]; *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [defendant did not forfeit right to object to instruction alleged to be incorrect statement of law and given in violation of due process]; *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 139-140 [defendant's challenge to constitutionality of jury instructions not forfeited for failure to object because "the constitutional right to have all elements of a criminal offense proved beyond a reasonable doubt is substantial"].)

intent to steal the property." (*Page*, at p. 1182.) The court's instructions in this case included neither of those essential elements for a felony theft conviction. But, as discussed, section 10851's prohibitions sweep more broadly, punishing not only taking but also driving without the owner's consent and with the intent either to permanently or temporarily deprive the owner of possession. Neither an intent to steal nor the value of the vehicle is an element of a felony offense of posttheft driving or joyriding. (See *People v. Van Orden*, *supra*, 9 Cal.App.5th at p. 1287; but see *Page*, at p. 1188, fn. 5 [declining to consider "whether equal protection or the avoidance of absurd consequences requires that misdemeanor sentencing under [Penal Code] sections 490.2 and 1170.18 extend not only to those convicted of theft under Vehicle Code section 10851, but also to those convicted for taking a vehicle *without* the intent to permanently deprive the owner of possession"].)[9]

The court's instructions here allowed the jury to convict Gutierrez of a felony violation of section 10851 for stealing the rental car, even though no value was proved—a legally incorrect theory—or for a nontheft taking or driving offense—a legally correct one. "When a trial court instructs a jury on two theories

_____

[9] On February 21, 2018 the Supreme Court ordered the parties in *People v. Bullard*, review granted and briefing deferred February 22, 2017, S239488, to brief the following question: "'Does equal protection or the avoidance of absurd consequences require that misdemeanor sentencing under Penal Code sections 490.2 and 1170.18 extend not only to those convicted of violating Vehicle Code section 10851 by theft, but also to those convicted for taking a vehicle without the intent to permanently deprive the owner of possession?' (See *People v. Page* (2017) 3 Cal.5th 1175, 1188, fn. 5.)"

14

of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*People v. Chiu* (2014) 59 Cal.4th 155, 167; see *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129.) "An instruction on an invalid theory may be found harmless when 'other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary' under a legally valid theory." (*In re Martinez* (2017) 3 Cal.5th 1216, 1226.)

Gutierrez insists he was convicted on an invalid theory of vehicle theft, pointing to the evidence that Gonzalez had filed a stolen car report with the California Highway Patrol. However, the deputy district attorney argued, to establish Gutierrez's guilt, it was only necessary for the People to prove Gutierrez intended to deprive the owner of the rental car of possession "for the period of time that he was driving that car." On this record we simply cannot say whether Gutierrez was convicted under a legally valid nontheft theory or a legally invalid theory of vehicle theft that did not include as an element the value of the stolen car. Accordingly, as did the Supreme Court in a similar situation in *People v. Chiu*, *supra*, 59 Cal.4th 155, we reverse the felony conviction for unlawful driving or taking a vehicle and remand the matter to allow the People either to accept a reduction of the conviction to a misdemeanor or to retry the offense as a felony with appropriate instructions. (See *id.* at p. 168 [allowing People to either accept reduction of conviction to second degree murder or retry charge of first degree murder when jury may have based first degree murder conviction on an improper legal theory]; see generally *People v. Navarro* (2007) 40 Cal.4th 668, 678 [pursuant to Penal Code section 1260, "an appellate court may modify a

15

verdict to reflect a conviction of a lesser included offense, where insufficient evidence supports the conviction on the greater offense"].)

We recognize that in *In re D.N.*, *supra,* 19 Cal.App.5th 898 the Fifth District employed a different analysis and reached a different conclusion on direct appeal from a juvenile adjudication for a felony theft violation of section 10851 after the effective date of Proposition 47 when no evidence of the vehicle's value had been introduced at the jurisdiction hearing. Considering the case to present an issue of sufficiency of the evidence,[10] the *D.N.* court held permitting the People to introduce evidence of value at a second wardship jurisdiction hearing would violate principles of double jeopardy. Thus, the juvenile adjudication was reduced to a misdemeanor. (*Id.* at p. 901.)

The court acknowledged there had been conflicting published opinions from the courts of appeal at the time of D.N.'s contested jurisdiction hearing. It nonetheless concluded, "The People were . . . on notice as of November 5, 2014, that vehicle theft under Vehicle Code section 10851 was to be a misdemeanor unless the value of the stolen vehicle exceeded $950. . . . [¶] The People should have been well aware the value of the stolen vehicle was relevant on whether the offense was a felony. The People chose instead to gamble, and lost their bet, that the Supreme Court would find Vehicle Code section 10851 outside

---

[10]     Because it was a juvenile court proceeding, the finding D.N. had violated section 10851 by taking her mother's car without permission was made by the court, not a jury. At disposition the court exercised its discretion and found the violation to be a felony. Possible nontheft violations of section 10851 are not addressed in the appellate decision.

16

the ambit of Proposition 47 and Penal Code section 490.2." (*In re D.N.*, *supra,* 19 Cal.App.5th 901.)

Given the conflicting authority on the issue and the prevailing decisions in the courts of appeal at the time of Gutierrez's trial,[11] we decline to fault either the trial court or the prosecutor for failing to correctly anticipate the outcome of cases pending before the Supreme Court.[12] This is not an instance where either the court or the prosecutor misinterpreted or failed to follow established law. Following the guidance of *Chiu*, the appropriate remedy for the error here is to allow a retrial on the felony charge if the People can in good faith bring such a case.

---

[11] Although Supreme Court review was ultimately granted in each of these cases, and in one instance the court of appeal granted a rehearing after the time of Gutierrez's trial, as of February 2016, three published decisions had held Proposition 47 did not apply to section 10851 and only one had held it did. (Compare *People v. Page* (2015) 241 Cal.App.4th 714, __ ["Penal Code section 490.2 is simply inapplicable to defendant's conviction" for violation of section 10851], judg. mod. 3 Cal.5th 1175; *People v. Haywood* (2015) 243 Cal.App.4th 515, __ [same], review granted March 9, 2016, S232250; *People v. Orozco* (2016) 244 Cal.App.4th 65, 68-69 [same], rehg. granted, review granted Aug. 10, 2016, S235603 with *People v. Ortiz* (2016) 243 Cal.App.4th 854, __ ["a defendant convicted under Section 10851 may be eligible for Proposition 47 resentencing if he or she can show the offense qualifies as a petty theft under Section 490.2"], review granted March 16, 2016, S232344.)

[12] The *D.N.* opinion does not explain why it criticizes the prosecutor for failing to predict the *Page* holding when presenting evidence at the jurisdiction hearing but not the juvenile court judge who exercised his discretion at the disposition hearing and found the vehicle theft to be a felony.

2. *Admission of Evidence of Gutierrez's Prior Felony Conviction Was Not Prejudicial Error*
    a. *Governing law and standard of review*

Evidence Code section 1101, subdivision (a), "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393; accord, *People v. Rogers* (2013) 57 Cal.4th 296, 325 (*Rogers*) ["'"[e]vidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition"'"]; *People v. Foster* (2010) 50 Cal.4th 1301, 1328 [same]; see *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["'[t]he rule excluding evidence of criminal propensity is nearly three centuries old in the common law'"].)

Evidence Code section 1101, subdivision (b), however, clarifies this rule "'does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition,' such as identity, common plan or intent," provided the charged and uncharged offenses are sufficiently similar to support a rational inference of those facts or of some other fact unrelated to the defendant's propensity to commit the charged offenses. (*People v. Edwards* (2013) 57 Cal.4th 658, 711 (*Edwards*); accord, *People v. Jones* (2013) 57 Cal.4th 899, 930; *Rogers, supra,* 57 Cal.4th at p. 326; see *People v. Falsetta, supra,* 21 Cal.4th at p. 914 ["the rule against admitting evidence of the defendant's other bad acts to prove his present conduct [is]

subject to far-ranging exceptions," citing Evid. Code, § 1101, subd. (b)].)

The degree of similarity necessary to support admissibility "depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371.) The least degree of similarity between the uncharged act and the charged offense is required to support a rational inference of intent; a greater degree of similarity is required for common design or plan; the greatest degree of similarity is required for identity. (*Rogers, supra*, 57 Cal.4th at p. 326; *Edwards, supra,* 57 Cal.4th at p. 711.) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'"" (*People v. Ewoldt, supra,* 7 Cal.4th at p. 402.) "'[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .'" (*Ibid.*)

In addition, even if evidence of uncharged crimes is relevant for a purpose other than the defendant's character or disposition, before admitting the evidence a trial court must also find it has probative value that is not substantially outweighed by its potential for undue prejudice under Evidence Code section 352. (*People v. Leon* (2015) 61 Cal.4th 569, 599; *People v. Kipp* (1998) 18 Cal.4th 349, 371; see Evid. Code, § 352 ["The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create

substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."].)

We review the trial court's determination of admissibility of evidence under Evidence Code sections 1101, subdivision (b), and 352 for abuse of discretion. (*People v. Leon, supra,* 61 Cal.4th at pp. 597, 599; *Edwards, supra,* 57 Cal.4th at p. 711; *People v. Davis* (2009) 46 Cal.4th 539, 602.)

b. *Evidence of Gutierrez's prior felony conviction*

Prior to trial the People filed a motion in limine seeking to introduce evidence of Gutierrez's 2012 conviction for unlawfully taking or driving a vehicle under section 10851. The People argued the prior conviction was admissible to show intent, motive, knowledge and absence of mistake. Gutierrez opposed the motion, arguing the circumstances of the prior offense and the current one were not sufficiently similar to support any permissible inference. After hearing argument from the parties, including a summary of the proffered evidence, the trial court held evidence of the prior conviction was admissible to show whether Gutierrez intended to take the vehicle without permission and whether he intended to evade the police.

At trial Jenny Sandoval testified, through an interpreter, that on April 11, 2012 she returned home from the grocery store with her children and parked her car on the street outside her house. She went into the house with the groceries. As her children got out of the car and approached the house, the car was driven away by an unknown person. Sandoval immediately called the police and reported the vehicle stolen. Sandoval testified she had her keys in her possession when the car was taken. It is not clear from the record how Gutierrez started the car.

20

Los Angeles Police Officer Noel Sanchez testified he received a radio call on April 11, 2012 regarding a stolen vehicle, which he later learned belonged to Sandoval. Soon after receiving the radio call Sanchez located the vehicle parked and unoccupied not far from Sandoval's house. Sanchez observed the vehicle from a distance and eventually saw a man, later identified as Gutierrez, enter it and drive away. Sanchez followed the vehicle in his patrol car until Gutierrez parked and left the car. Sanchez attempted to engage Gutierrez in conversation from his patrol car; but, when Gutierrez saw the officer, he fled. Sanchez chased Gutierrez on foot. After a few moments, Sanchez saw Gutierrez leave an alley. Gutierrez had discarded his jacket and was walking nonchalantly, "like if nothing was wrong, just minding his own business." Sanchez recognized Gutierrez and arrested him for vehicle theft. The location of Gutierrez's arrest was only a few blocks from where he was arrested for the current offense.

During its closing argument the prosecutor stated the facts between the prior offense and this case were "very similar" because in each incident Gutierrez fled when he saw the police and then he acted nonchalantly when the police caught up to him. Although the prosecutor mentioned that the two incidents had occurred in the same neighborhood, she cautioned the jury that the proximity did not mean Gutierrez committed both offenses; instead she stated, "It's about his modus operandi. It's about how similar the acts that he committed are from that case to this case. That the defendant immediately flees and that he just pretends as if nothing happened. It's all so similar as to how he operates when he commits crimes." In her closing argument Gutierrez's counsel told the jury that the prior conviction "doesn't

mean that he's a taker of vehicles; that he goes around and take[s] people's vehicles." Gutierrez's counsel emphasized the differences between the two incidents and argued the jury should not believe Gonzalez's testimony that she did not give Gutierrez permission to use the vehicle. Instead, she argued, Gonzalez likely told the police the vehicle was stolen only because she knew Gutierrez did not have the rental car company's permission to drive it and she did not want to get in trouble with her father and the rental car company.

c. *The admission of evidence of the prior felony, even if error, was harmless*

Gutierrez argues his prior conviction was not sufficiently similar to the present offenses to support an inference he had the intent to steal Gonzalez's car.[13] We agree several aspects of the incidents are dissimilar. In the 2012 incident Gutierrez took a vehicle from a stranger without use of her keys. In this case Gutierrez not only had a close relationship with the custodian of the car, his pregnant girlfriend, but he also had been given permission to drive the vehicle on multiple occasions, including earlier that day. In addition, he used the keys to take the car, as opposed to some other method of starting the ignition. Finally, in this case he briefly returned the vehicle to his girlfriend, or at least began to, before again driving away. Although Gutierrez's behavior in relation to the police was somewhat similar in the two instances, the probative value of the prior offense to support

---

[13] The People argued in the trial court Gutierrez's prior offense was relevant to show intent, motive, knowledge, absence of mistake and modus operandi. On appeal the People argue only that the prior offense was relevant to show intent.

22

an inference Gutierrez harbored the same intent in each case is, at best, minimal.

Despite our concerns, we need not resolve whether admission of the evidence amounted to an abuse of discretion because, even if error, it is not reasonably probable Gutierrez would have obtained a more favorable verdict absent the alleged error. (See *People v. Carter* (2005) 36 Cal.4th 1114, 1152 [error in failing to exclude evidence of uncharged misconduct does not require reversal "unless it is reasonably probable the outcome would have been more favorable to defendant had such evidence been excluded"]; *People v. Walker* (2006) 139 Cal.App.4th 782, 808 [same].)

There was overwhelming evidence, including unrebutted testimony and video footage, that Gutierrez took Gonzalez's vehicle, fled from the police, drove recklessly, had an illegally high blood alcohol level and caused damage to another vehicle. In fact, Gutierrez does not dispute he engaged in each of these acts. Instead, Gutierrez contends he had permission to drive Gonzalez's car or at least was under the mistaken belief he had permission. The People's evidence on this point consisted of Gonzalez's testimony that she told Gutierrez to return the vehicle when he initially took it and called him five times after he took it the second time, but he did not answer. To convict on the section 10851 charge on any theory of unlawful driving or taking, the jury must have believed Gonzalez's testimony she did not give Gutierrez permission to take the car. In that case, Gutierrez's prior conduct is immaterial because Gonzalez's testimony is dispositive evidence Gutierrez did not have permission. In addition, the trial court appropriately limited the use of Gutierrez's prior felony conviction by instructing the jury under

23

CALCRIM No. 375, "Do not consider this evidence for any other purpose except for the limited purpose of intent, consent, or motive[.] [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." It is presumed the jury followed this instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Gutierrez nonetheless argues any potential error was not harmless because the case was a close one. Gutierrez bases this argument on the length of the jury's deliberations and its requests for the readback of testimony and to rewatch the video footage. After hearing testimony for almost three days, the jury deliberated for less than four hours on all five charges.[14] These facts more reasonably support the inference the jury took care to review the instructions and ensure the prosecution had met its burden. (*People v. Walker* (1995) 31 Cal.App.4th 432, 438-439 ["we find that the length of the deliberations could as easily be reconciled with the jury's conscientious performance of its civic duty, rather than its difficulty in reaching a decision."].) On this record, it is not reasonably probable that the jury would have reached a more favorable verdict even if the evidence regarding the prior conviction had been excluded.

3. *The Trial Court Complied With Its Obligations Under Pitchess*

Prior to trial Gutierrez moved under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 for a review of Officer Jimenez's

---

[14] On appeal Gutierrez argues the jury deliberated for over six hours. However, it appears Gutierrez is counting the time the jury took a lunch break and was in the courtroom for supplemental argument, readback of testimony and rewatching the video footage.

24

personnel records.  The trial court agreed to inspect the records to determine whether Jimenez had a history of misconduct related to lying or fabrication.  The court reviewed the requested records in camera and found no discoverable information.  At Gutierrez's request, which the People did not oppose, we have reviewed the sealed record of the in camera proceedings and conclude the trial court satisfied the minimum requirements in determining whether there was discoverable information.  No abuse of discretion occurred.  (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1225.)

## DISPOSITION

The conviction on count 2 is reversed; Gutierrez's sentence is vacated in its entirety; and the matter is remanded for further proceedings consistent with this opinion.  On remand the People may either accept a reduction of the conviction on count 2 to a misdemeanor with the court to resentence Gutierrez in accordance with that election or retry Gutierrez for a felony violation of section 10851.  In all other respects Gutierrez's convictions are affirmed.


PERLUSS, P. J.

We concur:


ZELON, J.                              BENSINGER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.