Filed 5/15/24  P. v. Larned CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CODY CHARLES LARNED,<br><br>    Defendant and Appellant. | C098071<br><br>(Super. Ct. No. CR20211815) |

Defendant Cody Larned was arrested after driving a stolen 1999 Toyota Camry.  A jury found him guilty of unauthorized use of a car, receipt of a stolen car, and possession of burglary tools.  Defendant contends we should reverse the convictions and remand for a new trial because the verdict was based on legally inaccurate or inadequate theories.

He also contends the trial court erred in sentencing him to one year instead of six months for burglary tool possession, a misdemeanor.  And he asks us to correct the abstract of judgment to remove certain assessments that he claims the trial court waived in its oral pronouncement.

1

We agree with the misdemeanor sentencing error contention but otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

Evidence

The following facts describe the relevant evidence presented at trial. On Sunday, April 18, 2021, victim towed his 1999 Toyota Camry (the car) to a repair shop in Sacramento and left it in the parking lot but did not leave the key. The car had both license plates affixed in their respective places, the ignition was usable, and the steering column was intact, but the car "really wasn't drivable" because victim had taken some things apart.

Victim called the shop two days later to tell them he could bring the key to have them look at the car. The shop told him that they noticed the car in the lot on Monday, but it was no longer there, and nobody had towed it. Victim then reported the car as stolen.

One day later, while on speed enforcement in Davis, a police sergeant noticed a driver in a white Toyota drive by without a seatbelt. He also noticed the rear license plate was missing. The sergeant pulled the car over and identified the driver as defendant. Defendant told him the license plates were in the trunk. The sergeant ran the plates and learned that the car had been reported stolen. After being placed in handcuffs and put in the back of a patrol vehicle, defendant asked the sergeant, "Can you call my mom because I bought a hot one." The sergeant testified that, based on his 17 years of law enforcement, "hot one" refers to something that is stolen.

The sergeant saw a lanyard around defendant's neck with three unshaved General Motor keys.[1] And inside the driver's side door panel of the car, the sergeant found a key

---

[1] An officer later testified that the parts around a shaved key are shaved so that the key "doesn't have any kind of key markings."

ring with 11 Ford keys, a Hyundai key fob with a key, and 4 key rings belonging to a Chrysler or Jeep. None of the keys were shaved. The sergeant testified that based on his experience and training, the keys inside the panel were "useful tools for entering vehicles" and he believed they "were there to access the vehicles for that make." With the Ford key, for example, he explained that "you can access a Ford, go into the interior of the vehicle to burglarize it, to take property out of it, or you can use it to start the ignition of the vehicle and drive off with the vehicle."

The sergeant also found a T-handle by the gear shift that he testified is a "tool commonly used to punch ignitions of vehicles . . . [to] bypass a key or . . . jam up the ignition system so you can start the vehicle with any kind of key." And he saw that the bottom plastic portion of the steering column was broken and hanging down and a blank key was jammed into the ignition. The combination of these observations made him believe it was a "punched ignition," which occurs when a T-handle is used to break the ignition allowing the vehicle to be turned on with anything like a screwdriver or key that doesn't belong to the vehicle. The sergeant admitted there are lots of reasons why somebody might have a ring of keys, acknowledging that janitors and mechanics often have them, and he agreed that a T-handle is a tool a construction worker or mechanic might have.

After recovering the car, victim noticed that the metal door jamb had a dent and that there were a lot of things in the car that weren't his.

Defendant was charged with felony theft or unauthorized use of a vehicle (Veh. Code, § 10851 subd. (b); count one), felony purchase or receipt of a stolen vehicle (Pen. Code, § 496d subd. (a); count two),[2] and misdemeanor possession of burglary tools (§ 466; count three).

---

[2]     When referencing Vehicle Code section 10851, subdivision (a), we employ the shorthand "section 10851," but all other statutory references are to the Penal Code.

3

II

Jury Instructions, Closing Argument, and Verdict

Defense counsel argued that the section 10851 instruction should include an element regarding the car's value because the prosecution was pursuing the theory that defendant stole the car. The prosecution disagreed and insisted they were not trying to prove defendant stole the car but rather that he drove the car following its theft. The trial court agreed with the prosecution.

For count one, the court and the written instruction advised as follows: (1) defendant was charged with unlawfully driving a vehicle in violation of section 10851; (2) the prosecution was required to prove that defendant "drove someone else's vehicle without the owner's consent" and that defendant "intended to deprive the owner of possession or ownership of the vehicle for any period of time" when he drove the vehicle; and (3) "a taking requires that the vehicle be moved for any distance." (Italics omitted.) The written instruction was entitled "1820. Felony Unlawful Taking or Driving of Vehicle ([Vehicle] Code, § 10851 [subds. (a) & (b)])."

During closing arguments, the prosecutor described count one as "unlawful driving of a vehicle." Asking "[h]ow can you determine [defendant] drove," the prosecutor pointed to the sergeant's observation of defendant driving in Davis. Defense counsel admitted that defendant "was found driving a stolen car," "that there were keys and tools in [the] car," and that the ignition had been punched. She described count one as alleging that defendant unlawfully drove a vehicle, one element of which was that defendant drove a vehicle without the owner's consent. And she made clear to the jury that the prosecution was "not accusing [defendant] of stealing the actual car," only driving the car with intent to deprive the owner of possession. She argued that the evidence showed defendant did not know the owner of the car or that the car was stolen.

The count three instruction specified the People's duty to prove defendant's possession of a tool with the intent to use the tool to break into or enter a vehicle for the

4

purpose of taking or driving a vehicle or receiving stolen property. The prosecutor argued she proved the requisite intent a beyond reasonable doubt as follows: "Again, the [d]efendant's operating the Toyota Camry as if it's his own. He's driving in Davis. He's viewed by [the sergeant] doing the same. What is his intent when he has those tools? It's the intent I need to prove, it's the intent that he break or enter that same vehicle, or use the tools . . . to intend to break into – break or enter that vehicle, okay? . . . [¶] [The sergeant] testified to, that he believed that the use of the T-punch tool was to . . . punch out a vehicle ignition. He had seen those punch tools before, and he had known that they can be used for this particular purpose. [¶] The circumstantial evidence of the fact that the ignition in this particular vehicle was punched. The car is damaged. [Victim] identified to you that there was damage to the vehicle that wasn't there previous[ly]." Defense counsel countered that the prosecution's theory did not make sense because if defendant broke in or entered the car, then he must have also stolen the car, but the prosecution was not charging defendant with stealing the car.

The jury found defendant guilty of all three counts. Specific to count one, the jury found defendant guilty of unauthorized use of a vehicle.

### III

### Sentencing

The probation report made a sentencing recommendation subject to "attached terms and conditions." The terms and conditions included a criminal conviction assessment of 30 dollars per conviction under Government Code section 70373 and a court operations assessment of 40 dollars per conviction under section 1465.8.

The court sentenced defendant to two years for count one and a stayed term of two years for count two. For count three, the court imposed a concurrent term of one year, which it identified as the maximum term for that offense.

Defense counsel asked the court to waive attorney's fees due to defendant's indigence. The court granted her request as follows: "I will have all fees waived, and as

5

for the rest of the fees and breakdowns, [defense counsel], I think – do you waive a full reading of all of those into the record?" Defense counsel responded in the affirmative. The abstract of judgment included the criminal conviction assessment and the court operations assessment.

IV

Defendant's Appeal

Defendant timely appealed. He challenges the convictions for counts one and three, the sentence for count three, and the assessments. We begin with his challenges to count one.

DISCUSSION

I

*Count One*

As relevant here, a person can violate section 10851 in two ways: (1) by unlawfully taking a vehicle with the intent to permanently deprive the owner of possession ("vehicle theft") or (2) by driving the vehicle after the theft is complete ("posttheft driving"). (*People v. Garza* (2005) 35 Cal.4th 866, 871.) Defendant contends the jury instruction for this violation was prejudicially deficient because it instructed on vehicle theft but excluded the required element of vehicle value, and to the extent it instructed on posttheft driving, it was prejudicially incomplete because it did not expressly refer to posttheft driving. We find no merit in defendant's contentions.

The distinction between vehicle theft and posttheft driving is relevant for two reasons. The first reason concerns defendant's conviction for receipt of a stolen vehicle. While a person cannot be convicted of both vehicle theft and receiving the same vehicle as stolen property, a person can be convicted of receiving a stolen vehicle and posttheft driving of that vehicle. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 759; § 496, subd. (a); *Garza, supra*, 35 Cal.4th at p. 876.) Thus, if defendant was convicted of vehicle theft, he could not also be convicted of receiving the same vehicle. The second reason concerns

6

Proposition 47, the Safe Neighborhoods and Schools Act of 2014, an initiative measure that made obtaining property by theft a misdemeanor where the value of the property does not exceed $950. (*People v. Acosta* (2015) 242 Cal.App.4th 521, 525; § 490.2.) Under Proposition 47, a theft-based violation of section 10851 may be punished as a felony only if the vehicle is shown to have a value over $950. (*People v. Lara* (2019) 6 Cal.5th 1128, 1136 (*Lara*).) But a violation committed by posttheft driving may be charged and sentenced as a felony regardless of the vehicle's value. (*Ibid.*)

Here, defendant was charged with a felony violation of section 10851 subdivision (a). The instruction for such a violation, CALCRIM No. 1820, includes two alternatives: alternative A for vehicle theft and alternative B for posttheft driving. (CALCRIM No. 1820.) The court instructed the jury using alternative B, which specified that the defendant was charged with "unlawfully driving a vehicle" in violation of section 10851 and stated the People's burden to prove (1) that the defendant "drove someone else's vehicle without the owner's consent" and (2) that when he drove the vehicle, he intended deprive the owner of possession or ownership of the vehicle for any period of time. Defendant contends the instruction conveyed a legally invalid theory of vehicle theft because it was entitled "unlawful *taking or* driving" and included a sentence specifying that "a *taking* requires that the vehicle be moved for any distance, no matter how small" but did not include a requirement that the jury determine the value of the vehicle. We disagree.

To determine whether a legally inadequate or incorrect theory was conveyed to the jury, we ask whether there is a reasonable likelihood the jury understood the instruction as defendant suggests. (*People v. Singh* (2019) 42 Cal.App.5th 175, 182.) In doing so, we consider the instructions provided to the jury and counsels' argument to the jury. (*People v. Canizales* (2019) 7 Cal.5th 591, 613.) In cases finding a legally incorrect theory in a section 10851 instruction, the *substance* of the instruction specified that the defendant was charged with taking *or* driving and included taking *or* driving as an

element the prosecution was required to prove, thereby conflating unlawful taking and posttheft driving. (See, e.g., *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 856 [instruction "failed to adequately distinguish among, and separately define the elements for, each of the ways in which section 10851 can be violated"]; *People v. Bussey* (2018) 24 Cal.App.5th 1056, 1062 [jury could have convicted the defendant of posttheft driving or vehicle theft under the pattern instruction].) No such conflation of taking and driving is present in the substance of the instruction here. Moreover, during closing argument, the prosecutor indicated she was pursuing only the driving form of the offense. She asked the rhetorical question, "How can you determine the [d]efendant drove?" and then referred to the sergeant's observation of defendant driving the car in Davis. Also, defense counsel affirmatively stated in her closing argument, "the People are not accusing [defendant] of stealing the actual car," and admitted, "I told you, each and every one of you, that yes, [defendant] was found driving a stolen car." Finally, the verdict form submitted to the jury for this offense was limited to "unauthorized use" of the car.

Anticipating this conclusion, defendant asserts prejudicial error in the instruction because it did not expressly refer to posttheft driving, relying on *Lara, supra*, 6 Cal.5th 1128. There was no prejudice. Defendant's contention is grounded in the distinction between vehicle theft and posttheft driving. Specifically, "a defendant who steals a vehicle and then continues to drive it after the theft is complete commits separate and distinct violations of section [10851 subdivision (a)]." (*Garza, supra*, 35 Cal.4th at p. 880.) To establish a posttheft driving offense, the prosecution must show a "substantial break" between the taking and the driving the vehicle. (*People v. Martell* (2019) 42 Cal.App.5th 225, 234.) Although there is no precise demarcation point between taking and driving, courts have considered circumstances like those present here. (See, e.g., *Lara,* at p. 1138; *People v. Calistro* (2017) 12 Cal.App.5th 387, 395 (*Calistro*).)

8

In *Lara*, the instruction focused on driving as the illegal act but did not expressly refer to posttheft driving. (*Lara, supra*, 6 Cal.5th at p. 1138.) Nevertheless, the court concluded that the posttheft driving omission was harmless beyond a reasonable doubt because (1) the evidence "showed that [the] defendant was apprehended driving the vehicle six or seven days after it was stolen from its owner, a time gap that indisputably qualifie[d] as a ' "substantial break" ' between the theft and the driving," (2) there was nothing showing that the defendant also drove the vehicle while effectuating the theft, and (3) the prosecutor expressly informed the jury that it lacked sufficient evidence to convict the defendant of the theft. (*Ibid.*)

In *Calistro*, the victim woke up to his vehicle being stolen. (*Calistro, supra*, 12 Cal.App.5th at pp. 391-392.) About five hours later, a deputy sheriff approached the vehicle at a 7-Eleven store less than five miles from the victim's apartment with the defendant seated in the driver's seat and the car turned off. (*Id*. at p. 392.) The prosecution charged the defendant with unlawfully taking or driving a vehicle under section 10851, and the court's instruction on the charge substantively combined vehicle theft and posttheft driving. (*Id*. at p. 397.) The reviewing court concluded that the instruction was erroneous because it did not clarify the distinction between the two crimes. (*Id*. at p. 401.) But the court also held that the evidence overwhelmingly supported the conclusion that the defendant's driving of the car "was an act separate and distinct from its taking" because "[h]e had long since left the *locus* of the theft, was no longer in the process of escape, and now felt sufficiently removed from the crime that he could stop for gas and linger in the stolen car at the 7-Eleven." (*Id*. at p. 403.) Thus, even if there was substantial evidence that the defendant took the car and every juror believed that he did, no reasonable juror could have found that he took the car but did not drive it after the theft was complete. (*Id*. at p. 403.)

Here, we reach the same conclusion as in *Lara* and *Calistro*. While the jury instruction included nonsubstantive references to "vehicle theft," it was substantively

9

focused on driving.  And, as in both *Lara* and *Calistro*, the evidence overwhelmingly supports the conclusion that defendant's driving occurred posttheft.  Specifically, nothing suggests defendant was still in the process of taking the car or fleeing the scene from which the car was stolen.  (See *Calistro, supra*, 12 Cal.App.5th at p. 403.)  A day had passed since the car was reported stolen, even more time had passed since it was last seen, and defendant was in Davis, about 22 miles from the scene of the theft in Sacramento.  (See *ibid.*; see also *People v. Malamut* (1971) 16 Cal.App.3d 237, 239-242 [car stolen from Los Angeles airport found near Los Angeles City College, an "entirely different location"].)  Lastly, the car was originally undrivable but became drivable between the time victim left it and the time defendant drove it.  Defendant does not contend this evidence was insufficient to support a conviction on a posttheft driving theory.  And we conclude that no reasonable juror could have found that defendant initially stole the car but did not drive it after the theft was complete.  Thus, the omission of an express reference to posttheft driving in the count one instruction was harmless beyond a reasonable doubt.

The cases on which defendant relies – *People v. Gutierrez, supra*, 20 Cal.App.5th 847, *People v. Jackson* (2018) 26 Cal.App.5th 371, and *People v. Bussey, supra,* 24 Cal.App.5th 1056 – are distinguishable.  In *People v. Gutierrez*, the jury instruction did not distinguish between theft and nontheft forms of section 10851, the prosecutor's closing argument relied on evidence showing that defendant took and drove the vehicle, and the record did not allow the court to determine which theory the jury applied. (*People v. Gutierrez* at pp. 851-852, 856-857.)  In *People v. Jackson*, the instruction similarly failed to distinguish between theft and posttheft driving and the prosecutor's closing argument focused on the driving theory but also referred to a separate theory of guilt that the prosecutor referred to as taking or possessing the vehicle.  (*People v. Jackson* at p. 376.)  In addition, there was no "direct evidence of driving that compelled the conclusion that if [the defendant] stole the vehicle, he also drove it after the theft."

(*Id.* at pp. 380-381.) And in *People v. Bussey*, the jury instruction included both the taking and driving theories and the People conceded that nothing in the record indicated which theory the jury relied on. (*People v. Bussey,* at p. 1062.)

We also find no merit in defendant's contention that the trial court had a sua sponte duty to provide the vehicle theft version of the section 10851 instruction. A sua sponte instructional duty arises as to a defense " ' "only if it appears that the defendant is relying on [the] defense, or if there is substantial evidence supportive of [the] defense and the defense is not inconsistent with the defendant's theory of the case." ' " (*People v. Morales* (2019) 33 Cal.App.5th 800, 809.) Here, defendant did not rely on vehicle theft as a defense at trial. His argument to the trial court that the prosecution was pursuing the vehicle theft theory does not reflect such reliance. The record shows that defendant sought to prove he did not steal the car and did not know the car was stolen. It would have been inconsistent with that theory to instruct on the theft version of section 10851. (See *People v. Morales* at p. 809 [concluding purported defense of stealing a vehicle would be inconsistent with the defendant's theory that he lacked the intent to deprive the owner of possession].)

Finally, contrary to defendant's view, an instruction prohibiting a defendant from being convicted of theft and receipt of the same property ("the taking and receiving instruction") was also unwarranted. The taking and receiving instruction is required when the defendant is charged with both stealing and receiving the same property. (*People v. Strong* (1994) 30 Cal.App.4th 366, 376.) It instructs the jury that if it finds the defendant guilty of stealing, it cannot also find the defendant guilty of receiving the same stolen property. (See CALCRIM No. 3516.) However, dual convictions of posttheft driving and receipt of the same property are not prohibited. (*People v. Jaramillo, supra*, 16 Cal.3d 752, 759; *Garza, supra*, 35 Cal.4th at p. 876.) Because we conclude that the jury found defendant guilty of posttheft driving, an offense distinct from the theft itself, the taking and receiving instruction was not required.

11

## II

### *Count Three*

Defendant challenges his count three conviction as well as the sentence imposed. We address the conviction challenge first.

### A.    Conviction

To establish a defendant's guilt under section 466, the People must prove three elements:  (1) possession by the defendant of tools within the purview of the statute; (2) with the intent to use the tools to break or otherwise effectuate physical entry into a structure; (3) to commit theft or some "other felony" within the structure.  (*People v. Bay* (2019) 40 Cal.App.5th 126, 136.)  Defendant contends the second and third elements were incorrectly conveyed to the jury.  We disagree.

As to the second element, defendant points to the prosecutor's closing argument that this element was satisfied because the evidence showed the car's ignition was punched out.  Defendant contends this argument was legally inaccurate because the intent to break or enter a vehicle cannot be proven where the act of breaking was performed after the entry.  In support, defendant relies on *In re H.W.* (2019) 6 Cal.5th 1068, but that case does not stand for the proposition claimed.  In *H.W.*, a minor was found inside a store with pliers he used to remove an antitheft tag from a pair of jeans.  (*Id*. at p. 1071.) The reviewing court held that the record lacked sufficient evidence that the minor possessed the pliers with the intent to enter a structure.  (*Id*. at p. 1076.)  The only intent the evidence showed was the minor's intent to use the pliers to remove the security tag. (*Ibid*.)  *H.W.* does not suggest any order to breaking or entering a vehicle for purposes of section 466.  Moreover, intent is " 'rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances disclosed by the evidence.' " (*People v. Falck* (1997) 52 Cal.App.4th 287, 299.)  We see no reason why intent to effectuate physical entry into a vehicle could not, as a matter of law, be inferred from direct

evidence of a punched ignition, possession of one or more tools within the purview of section 466, and other circumstantial evidence.

To the extent defendant contends there was insufficient evidence for a jury to find the second element satisfied, we disagree. Section 466 does not require the prosecution to show that a defendant intended to use the burglary tools to break into a particular structure or vehicle. (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1087-1088.) Rather, a violation of section 466 is complete when the tools are obtained for the purpose of using them to break into or enter a vehicle or other structure. (*People v. Southard*, at p. 1088.) The jury was so instructed, and we presume the jury understood and followed that instruction. (*People v. Morales* (2001) 25 Cal.4th 34, 47.) Defendant was found operating a stolen car with three General Motor keys hanging from a lanyard around his neck. Inside the driver's side door were sets of keys for different vehicle makes, which, according to the sergeant who arrested defendant, were useful tools for "entering vehicles" of the corresponding make. A T-handle tool was also located in the car near the gear shift, and the sergeant testified that this tool is commonly used to punch ignitions to start a vehicle with any key. The presence of that tool could be considered when evaluating the purpose for which defendant possessed the keys. (*People v. Southard,* at pp. 1090, 1092-1093.) From this evidence, the jury could have reasonably inferred that defendant intended to use the keys on his person and in the car to break into or enter vehicles in general.[3] (See *People v. Maury* (2003) 30 Cal.4th 342, 396 ["An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence"].)

With respect to the third element, defendant takes issue with the court's instruction referencing receiving stolen property as one of the "other felonies" defendant intended to

---

[3] The jury need not agree on exactly how a crime was committed where the evidence shows a single discrete crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

commit. He contends this reference is incorrect because a defendant cannot be convicted of burglary and receiving property stolen through the burglary. Defendant is incorrect. Our Supreme Court expressly overruled the principle on which he relies. (See *People v. Allen* (1999) 21 Cal.4th 846, 866.) There is no bar to dual convictions for burglary and receiving property stolen during the burglary. (*Ibid*.) Burglary can be committed without an actual taking; thus, a defendant who is convicted of burglary is not convicted of stealing any property. (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 536; *People v. Allen* at p. 866, approving *People v. Carr* (1998) 66 Cal.App.4th 109, 114.) The same is true of burglary tool possession: possession of the tools with the requisite intent to use them to enter a structure to commit a felony is the crime, not any taking of property that occurs. Defendant provides no basis to overturn his count three conviction.

B.     Sentence

The parties agree that the trial court erred by imposing a one-year term for count three because the maximum term for the violation is six months. (§§ 19, 466.) Given the court's clear intent to impose the maximum term for this offense, we modify the judgment to reflect the six-month term. (See § 1260; *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 ["remand is not appropriate when it would be an idle act"].)

III

*Assessments*

Defendant contends that the court's oral pronouncement of judgment waived all fees and, as a result, the abstract of judgment imposing the conviction assessment and the court operations assessment is incorrect. We disagree.

At sentencing, defense counsel asked the trial court to "waive attorney's fees in this case" due to defendant's indigence. But she did not ask the court to waive any other fees. In granting her request, the trial court stated it "will have all fees waived" but then turned to the "rest of the fees and breakdowns" and asked defense counsel if she waived a full reading of those into the record. Defense counsel agreed. This dialogue leads to two

14

conclusions: (1) the court's waiver of all fees was limited to attorney's fees; and (2) defense counsel waived oral pronouncement of any other fees. Those other fees were specified in the probation report and included the assessments that defendant now challenges. Because defense counsel waived oral pronouncement of "rest of the fees," defendant's current challenge to two of those fees is forfeited. (See *People v. Tillman* (2000) 22 Cal.4th 300, 302.)

DISPOSITION

The judgment is modified to reflect a concurrent term of six months for count three. The trial court is directed to issue an amended minute order to reflect this change and forward a copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
KRAUSE, J.

15