Filed 11/18/21  P. v. Robinson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMUAL WAYNE ROBINSON, JR.,<br><br>    Defendant and Appellant. | G060201<br><br>(Super. Ct. No. C1909409)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Santa Clara County, Sharon A. Chatman, Judge.  Affirmed.

Maggie Shrout for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

A jury determined Samual Wayne Robinson, Jr., was guilty of unlawfully taking/driving a vehicle while having a prior conviction and possessing ammunition. The court sentenced Robinson to three years in prison. On appeal, Robinson alleges the court violated his due process right by allowing the prosecutor to admit prejudicial evidence of prior convictions. He also complains the court improperly instructed the jury. We affirm the judgment.

FACTS

In February 2019, Ramon Zamora purchased a 1998 Toyota Tacoma truck from his friend Daniel Soto. Zamora used the truck for his construction/plumbing job and kept approximately $10,000 worth of tools in the truck's bed. On April 28, 2019, Zamora parked his truck on a street in San Jose. When he returned approximately one hour later, the truck was gone. Because the title of the truck was still in Soto's name, both Zamora and Soto went to the police station to report the truck stolen. However, they left the station without making a police report because there was a long wait, and they had to return to work. They told other friends about the theft including Rafael Tapia and Edgar Zuniga.

On May 8, 2019, Zuniga was working at the Pick-N-Pull auto parts store in San Jose. At approximately 10 a.m., he saw Robinson driving what he believed to be Zamora's stolen truck. Zuniga, who was standing in the store's parking lot, watched Robinson drive into the parking lot, briefly exit the vehicle, and then drive away. Zuniga called Zamora, who in turn contacted Soto and Tapia and asked them to meet him at Pick-N-Pull's parking lot.

Tapia arrived first at the Pick-N-Pull and saw Lisa Brigman driving the stolen truck into the parking lot. When Tapia approached Brigman and asked if the truck was hers, she appeared nervous and drove into a parking space. Tapia watched Brigman exit the truck and walk over to a red Ford Mustang parked nearby. Robinson was

2

working under the Mustang's open hood. Zamora saw Robinson was attempting to jump-start the Mustang's battery.

Robinson walked towards Tapia, who by this point had been joined by Zamora. Robinson asked what was going on. Tapia saw Zamora was holding the truck's pink slip, and he told Robinson to look at the document because it proved the truck belonged to Zamora. Robinson replied he was not sure about Tapia's claim because "Rickey" let him borrow the truck.

Robinson walked towards the truck, telling the men he installed a new battery and he was going to "take it by force or by any means." Robinson opened the driver's door, unlocked the hood, and then walked to the front of the truck to open the hood. Tapia saw Robinson begin to disconnect the battery, prompting Tapia and Zamora to call the police. Robinson told the men the battery in the back of the truck belonged to him. Zamora told Robinson he could not take anything.

The 911 operator told Zamora that she could not send a police officer until Soto, the registered owner of the truck, was present. While they were waiting, Tapia stopped a police car that was driving past on the street. Tapia told the officers about the stolen truck and that the perpetrators were nearby. He pointed to Robinson and Brigman, who looked in the direction of the police officers, and then started to briskly walk away. The officers drove through the parking lot to "cut them off" and stop them from leaving. Robinson and Brigman complied with the officer's orders to stop.

The officer who searched Brigman's bag found a lighter that could also be used as a glass punch, a wooden club, a box of ammunition, and two knives. He also discovered documents and medicine with Robinson's name. A different officer noticed the truck's ignition had been damaged. The police arrested Robinson and Brigman, interviewed the witnesses, and conducted an in-field indentification. Zamora and Tapia identified Robinson and Brigman. Zuniga was reluctant to participate, afraid to identify anyone. Officers arranged for Zuniga to sit in the patrol car's back seat, promising no

3

one could see him through the reflective plexiglass. Zuniga then indicated Robinson was driving the truck the first time he saw the vehicle, and Brigman was driving it the second time he saw it.

After searching the red Mustang, officers discovered multiple keys, a crowbar, and three boxes of ammunition. Zamora paid $500 to replace his truck's ignition and suffered the financial loss of his missing tools. Zamora reported the truck's hood and spark plugs were damaged.

On August 8, 2019, the Santa Clara County District Attorney filed an amended information, charging Robinson with the unlawful taking and driving of a vehicle with a prior conviction (Veh. Code, § 10851, subd. (a), Pen. Code, § 666.5, subd. (a), count one);[1] buying or receiving a stolen vehicle with a prior conviction (Pen. Code, §§ 496d, subd. (a), 666.5, subd. (a), count two); possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)(1), count three); and possession of burglar tools (Pen. Code, § 466, count four).

At trial, Zuniga identified Robinson as the person who he saw driving the stolen truck the first time he saw it in the Pick-N-Pull parking lot. He added that Robinson looked different to him, explaining Robinson was thinner, his hair was pulled back instead of down, and his face appeared different. Zuniga admitted he was afraid to come to court but agreed to after learning a warrant would be issued for his arrest if he did not make an appearance.

Brigman, testifying pursuant to an immunity agreement, stated she and Robinson had been in a relationship for seven years. She testified that on the day of the incident she met Robinson at a restaurant in San Jose. When she arrived, she saw Robinson had a Toyota Tacoma truck and a red Mustang. She had never seen those vehicles before. After talking for several hours at the restaurant, Robinson told Brigman

---

[1] All further statutory references are to the Vehicle Code, unless otherwise indicated.

4

he needed to go to Pick-N-Pull to get a new key for the Mustang. She recalled Robinson had the Mustang towed to the Pick-N-Pull and she drove the truck there. When she arrived, two men approached her and said the truck was stolen. Brigman testified she told the men that her boyfriend borrowed the truck. She walked over to the Mustang and then watched Robinson speak with the men. She recalled the police arrived approximately 20 minutes later. Brigman told the police the bag she took from the Mustang did not belong to Robinson. She claimed the methamphetamine, pipe, and ammunition belonged to her. On cross-examination, Brigman admitted she frequently used methamphetamine and used it the morning of the incident. Brigman admitted she might have seen the truck the night before when she saw Robinson.

Over Robinson's objections, the court permitted the prosecution to introduce evidence through live witnesses about prior incidents taking place two years earlier. The jury heard about the following two crimes:

(1) On May 10, 2017, Ronald N.'s 2001 white GMC truck was stolen from a parking lot in San Jose. The following month, Sheriff's Deputy Vanessa Eugenio pulled over Robinson driving the GMC truck after determined it was stolen. She testified about how she arrested Robinson for possessing a stolen vehicle. She heard Robinson claim his friend Dewit gave him the vehicle. Robinson indicated he and his girlfriend were using the truck for a place to sleep. Engenio searched the vehicle and found a metal rod that she believed, based on her training and experience, was a tool used to break into locked vehicles.

(2) On November 3, 2017, Roger G.'s 2017 Toyota Tacoma truck was stolen from the parking lot of the Toyota dealership where he worked. Later that month, Officer Ramon Sanchez and his partner were sent to a restaurant in San Jose to investigate a "suspicious vehicle." They found Robinson sitting in the driver's seat of the stolen Tacoma truck. Sanchez testified Robinson claimed he did not know the truck was

5

stolen and he borrowed it from someone he knew, Steven Keffer. Sanchez arrested Robinson.

The parties stipulated Robinson was convicted for unauthorized driving or taking of a vehicle relating to the incidents involving the GMC truck and the Toyota Tacoma truck discussed above.

In addition, the parties stipulated Robinson had two other convictions for unlawfully taking/driving a vehicle. The jury did not hear testimony or details regarding these crimes. Instead, the court admitted exhibit No. 13 consisting of conviction packages. The court asked counsel to read aloud the stipulation Robinson had convictions for unlawfully taking or driving vehicles belonging to Christopher B. and Carmen F. In addition, the parties stipulated Zamora was previously convicted of providing false information to an officer in 2019.

Thereafter, the jury convicted Robinson of count one (unauthorized use of a vehicle) and count three (possession of ammunition). The jury acquitted Robinson of count four (possession of burglar tools). As instructed by the trial court, the jury rendered no verdict on the alternative offense (count two, receiving a stolen vehicle) and the court dismissed this count. The court sentenced Robinson to three years in prison.

DISCUSSION

I. *Prior Uncharged Acts*

Robinson contends the trial court erred by admitting evidence about his four prior convictions because the crimes were dissimilar to the charged crimes. We conclude he is correct regarding two of the prior convictions, however, the error does not require reversal because it is not reasonably probable Robinson would have obtained a more favorable result absent this error.

A. *Applicable Law*

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts. (Evid. Code, § 1101, subd. (a).) But such

6

evidence may be admissible when relevant to prove a fact in issue, such as motive, opportunity, intent, knowledge, identity, or the existence of a common design or plan. (Evid. Code, § 1101, subd. (b).)

"The degree of similarity necessary to support admissibility 'depends on the purpose for which the evidence was presented.' [Citation.] The least degree of similarity between the uncharged act and the charged offense is required to support a rational inference of intent; a greater degree of similarity is required for common design or plan; the greatest degree of similarity is required for identity. [Citations.] 'In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'"' [Citation.]" "'[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .'" [Citation.]" (*People v. Gutierrez* (2018) 20 Cal.App.5th 847, 859 (*Gutierrez*).)

Even if evidence of a prior crime is admissible under Evidence Code section 1101, it may be excluded under Evidence Code section 352 if it is unduly prejudicial. Evidence Code section 352 gives trial courts discretion to exclude evidence if its probative value is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"We review the trial court's determination of admissibility of evidence under Evidence Code sections 1101, subdivision (b), and 352 for abuse of discretion. [Citations.]" (*Gutierrez, supra,* 20 Cal.App.5th at p. 860.) "[T]he court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.)

7

"[S]tate law error in admitting evidence is subject to the traditional *Watson* test:  The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error.  [Citations.]"[2]  (*People v. Partida* (2005) 37 Cal.4th 428, 439.)  Federal due process is offended only if admission of the irrelevant evidence renders the trial fundamentally unfair.  (*Ibid*.)

B.  *Pertinent Facts*

Before turning to the merits, we will briefly review the facts leading up to the court's ruling granting the prosecutor's pretrial motion in limine to admit evidence of Robinson's four prior convictions.  In the motion, the prosecutor described the facts underlying two prior 2017 offenses, which we need not repeat in detail because this evidence was presented at trial and already summarized in this opinion.  Suffice it to say, the police caught Robinson driving Ronald N.'s GMC truck and Roger G.'s Toyota truck without their permission.

The motion in limine also contained details about the other two convictions.  In 2015, a CHP officer saw Robinson driving a Dodge Pickup but not wearing a seat belt.  The officer conducted a traffic stop and noticed Robinson was towing a GMC SUV with expired registration tags.  The officer determined the Dodge truck was owed by Carmen F. and had been reported stolen from San Jose the prior week.  After being arrested, Robinson stated he was admitted to the medical center for overnight treatment and his girlfriend and "Henry Jr." picked him up in the Dodge truck and took him to a nearby restaurant.  Henry Jr. asked Robinson to take the truck and unload the GMC being towed.  Robinson agreed to give a different group of friends a ride in the truck, and they were pulled over and taken into custody.  His friend reported she saw Robinson start the truck with a screwdriver.  When she asked Robinson about it, he responded he was fixing the ignition for Henry Jr.

---

[2]        *People v. Watson* (1956) 46 Cal.2d 818.

8

The second conviction related to Robinson's arrest in June 2017, when he was caught driving Christopher B.'s stolen white Cadillac SRX. When San Jose police officers initiated a traffic stop, Robinson parked the vehicle, got out, and started to walk away. Robinson had a key for the vehicle and claimed he was "setup" by someone named Koda. Christopher B. stated he kept a spare key in the Cadillac's center console.

The prosecutor argued evidence about the prior convictions was admissible under Evidence Code section 1101, subdivision (b). The prosecutor asserted the "evidence will be short as the People intend to prove up the prior incidents via one officer and one civilian for two of the prior incidents, and via the admission of [c]ertified documents for the other two prior incidents." Robinson objected, maintaining the evidence was not probative as to his intent or knowledge because in all the cases Robinson denied knowing the vehicles were stolen. Counsel argued, "Effectively, what the people are going to be presenting is the absence of evidence." He noted that in some of the prior cases, Robinson had keys to the vehicles as opposed to the current case where the ignition was damaged. In addition, unlike the prior cases, law enforcement did not see Robinson drive the stolen truck.

The court stated it reviewed the prior uncharged conduct and determined the evidence was material as required under Evidence Code section 1101, subdivision (b). It commented that because Robinson pleaded not guilty, "all elements of every single charge and allegation is at issue . . . [including] knowledge and intent." Turning to the analysis required under Evidence Code section 352, the court stated the prior convictions were not too remote and there was a high degree of certainty. It commented, "All four appear to be convictions. And it doesn't get any more certain than that." The court added any concerns that the evidence may be confusing or misleading could be remedied by appropriate jury instructions. Finally, the court stated there were similarities in that Robinson appeared to be interested in "bigger sort[s] of vehicles" in his prior offenses and current charges. The court noted that in all the offenses Robinson claimed the stolen

9

vehicles belonged to a friend or someone he knew. The court indicated the facts did not have to be identical and there were sufficient similarities to admit the four prior incidents to prove intent, knowledge, and common scheme and plan.

As mentioned, the jury heard testimony regarding two of the priors and the parties stipulated Robinson had a total of four prior convictions for the unauthorized taking/driving of a vehicle. In closing argument, the prosecutor commented the defense would have the jury believe Robinson "is here because of no fault of his own, that he's a perfectly innocent man and that we the people, the government is just out to get someone. Someone who has harbored the exact same intent and knowledge on four separate occasions. With the proof of the conviction to show it." The prosecutor also commented that when examining whether Robinson had the intent to deprive the owner of this truck, the jury could "look back on the prior uncharged conduct." The prosecutor stated, "[Y]ou can take the intent that . . . Robinson was convicted of having–because those were convictions–and transfer that intent to consider whether or not, okay, did he have intent in this case, did he intend to not give this truck back to this owner for any period of time?" The prosecutor also stated the convictions related to whether Robinson knew the truck was stolen, stating the following: "[T]he fact that . . . Robinson has these convictions, he's had these interactions with police [and] what it means to know that property is stolen. He's been there before. You can use that past experience to determine whether or not he had the knowledge in this case that he knew the truck was stolen."

The court gave the CALCRIM No. 375 instruction, discussing the use of evidence of uncharged offense to prove intent, knowledge, common plan, etc. Relevant to this case, the court instructed as follows:

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:

10

"A. The defendant acted with the intent to temporarily deprive the owner of his vehicle in this case;

"B. The defendant knew the property was stolen when he allegedly acted in this case; [¶] or

"C. The defendant had a plan or scheme to commit the offense alleged in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offense.

"Do not consider this evidence for any other purpose except for the limited purpose of intent, knowledge, or common plan.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Counts 1 and 2. The People must still prove each charge beyond a reasonable doubt."

C. *Analysis*

The Attorney General argues the prior incidents were sufficiently similar to the charged conduct to prove intent, knowledge, and common scheme/plan. In discussing the allegedly similar facts, we find it puzzling the Attorney General refers, in part, to information that was not presented to the jury but found in the clerk's transcript (as part of the prosecutor's pretrial motion in limine). Two of the four prior convictions were submitted to the jury through exhibit No. 13, and not live testimony. However, exhibit No. 13 merely consisted of two conviction packets, containing the plea and sentencing forms, but no information about the underlying facts of the crime.

Consequently, for two of the four convictions, the jury did not know Robinson claimed someone gave him permission to drive vehicles that were stolen. The

11

jury was unaware of the dissimilarities; that for one of those convictions Robinson had a key to the vehicle, and for the other he used a screwdriver to start the engine.

Without details about the factual similarities of the uncharged and charged offenses, we fail to see how the prior convictions had any probative value on the issue of intent, knowledge, or common scheme/plan. To the contrary, the only probative value of the prior offense evidence (exhibit No. 13) was to impermissibly suggest Robinson had a propensity to unlawfully take and drive vehicles.

As for the other two convictions, which the jury did hear testimony about, they are similar only in that in each case Robinson claimed someone let him borrow the vehicle, suggesting he did not know it was stolen. There is case authority holding evidence of this prior conduct can be relevant to the issue of intent for the current offense. (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1578 (*O'Dell*).) As our Supreme Court explained, "the doctrine of chances teaches that the more often one does something, the more likely that something was intended, and even premeditated, rather than accidental or spontaneous." (*People v. Steele* (2002) 27 Cal.4th 1230, 1244.) Accordingly, this evidence was admissible at least on the issue of intent. The same cannot be said for the issue of common scheme/plan because the fact patterns of each crime differ. Other than the fact all the convictions involved large vehicles (a fact not particularly noteworthy), there were important dissimilarities between the convictions and the current offense. For example, Robinson possessed the vehicle's keys and did not damage the vehicles in the two cases presented to the jury. Whereas in this case the ignition, spark plugs, and hood were damaged. The probative value of these two prior offenses to support an inference of criminal scheme/plan was minimal.

"Despite our concerns, we need not resolve whether admission of the [prior convictions] amounted to an abuse of discretion because, even if error, it is not reasonably probably [Robinson] would have obtained a more favorable verdict absent the alleged error. [Citations.]" (*Gutierrez, supra,* 20 Cal.App.5th at p. 862; *People v. Carter*

12

(2005) 36 Cal.4th 1114, 1152 [error in failing to exclude evidence of uncharged misconduct does not require reversal "unless it is reasonably probable the outcome would have been more favorable to defendant had such evidence been excluded"].)

In order to prove count 1, unlawful taking or driving of a vehicle, the prosecution was required to establish Robinson drove the vehicle and intended to temporarily deprive Zamora of possession of his truck. (§ 10851, subd. (a), hereafter section 10851(a).) The first element of the offense required evidence Robinson drove someone else's vehicle. This was proven by witness testimony, not the prior convictions. Zuniga testified he saw Robinson driving the stolen truck. Although Zuniga was reluctant to identify Robinson before or at trial, the jury was in the best position to determine his credibility as a witness. The trial court instructed the jury that the testimony of one witness was sufficient to prove any fact.[3] We have no reason to second guess the credibility call of the trier of fact. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

In addition, there was circumstantial evidence supporting the conclusion Robinson drove the vehicle, which had been stolen two weeks prior. Brigman testified Robinson told her that he borrowed the truck from a friend. She saw Robinson with the vehicle the night before their arrest, as well as the following day at a restaurant, when Robinson asked her to drive it to Pick-N-Pull. Tapia testified Robinson said it was a borrowed truck, and he needed to retrieve his batteries from under the hood and from the bed. The jury could reasonably infer Robinson at some point drove the vehicle he "borrowed," especially after installing a battery to make it drivable.

---

[3] The court gave CALCRIM No. 301, which states, "Unless I instruct you otherwise, the testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

13

As for the next element, there was undisputed proof the truck belonged to someone other than Robinson. Soto was the registered owner and had agreed to sell the vehicle to Zamora, who took physical possession of it. Neither Soto nor Zamora gave Robinson permission to drive the vehicle.

With respect to the last element, there was ample evidence Robinson intended to temporarily deprive the owner of possession. Soto and Zamora testified the vehicle was taken from the street corner without their permission. The reasons why they were unsuccessful in reporting the truck stolen was due to time constraints and work schedules, not a change of heart. When Robinson was confronted about the pink slip and ownership rights, Robinson did not immediately agree to give up possession of the truck. Instead, he made excuses and claimed ownership of the vehicle's batteries, one of which was connected to the engine. It was not until the police arrived that Robinson relinquished control and tried to quickly make his exit, in the opposite direction from the police. His flight suggested a consciousness of guilt. And while evidence of a tampered ignition reflects the method by which the vehicle was taken, it is a factor in combination with other evidence that supports a finding Robinson intended to deprive the owner of possession.

Lastly, due to the nature of the charges a least one of the prior convictions would have been admitted. Counts one and two had prior conviction enhancement allegations. Thus, the jury would have learned about Robinson's prior conviction for violating section 10851(a), which was the same as the charged offense.

Based on all of the above, we conclude it was not reasonably likely that a different result would have occurred if the proposed evidence had been excluded. Even if the challenged evidence was inadmissible, any resulting error was harmless. The trial court instructed the jury that it must not "conclude from this evidence that the defendant has a bad character or is disposed to commit crime." (CALCRIM No. 375.) We presume the jury followed the trial court's instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834,

14

852.) This instruction sufficiently countered any prejudice resulting from the evidence of defendant's prior uncharged vehicle thefts.

II. *Instructional Error*

Robinson asserts the court erred by instructing the jury with CALCRIM No. 1820 because it "allowed the jury to convict [him] in the absence of his knowledge that the truck was stolen, in violation of due process." The argument consists of several layers. Robinson maintains CALCRIM No. 1820 failed to include the required element that he knew the vehicle was stolen. Robinson claims this first error was compounded by the court's decision to give CALCRIM No. 376 regarding possession of recently stolen property. He argues this instruction lessened the prosecutor's burden of proof because the instruction told the jurors that if they determined the truck was recently stolen, a conviction required any other slight evidence tending to prove his guilt. He concludes slight evidence "was not a valid substitute for proof beyond a reasonable doubt that . . . Robinson *knew* the truck was stolen." (Italics added.)

Before addressing the merits of the issue, we reject the Attorney General's assertion the matter was forfeited because counsel did not object. "[T]here is no forfeiture of an instructional issue on appeal where, as here, the issue raised asserts of violation of substantial constitutional rights. [Citation.]" (*O'Dell, supra,* 153 Cal.App.4th at p. 1574 [considered issue whether arguments concerning CALCRIM No. 376 forfeited when defendant charged with section 10851(a)].)

Our standard of review is well established. "An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] The court reviews instructions in context of the entire charge of jury instructions rather than in artificial isolation. [Citation.]" (*O'Dell, supra,* 153 Cal.App.4th at p. 1574.)

We turn first to Robinson's challenge to CALCRIM No. 1820. One of the elements necessary to establish a violation of section 10851(a), was Robinson drove or

15

took a vehicle with the *specific intent to temporarily deprive* the owner of title and possession. Contrary to Robinson's contention, the crime does not require knowledge the vehicle was stolen, only the intent to deprive someone of possession. "Knowledge that the vehicle was stolen, *while not an element of the offense*, may constitute evidence of the defendant's intent to deprive the owner of title and possession. [Citation.]"[4] (*O'Dell, supra,* 153 Cal.App.4th at p. 1574, italics added.)

As noted by our Supreme Court, a section 10851(a) conviction can have a nontheft factual basis. (*People v. Page* (2017) 3 Cal.5th 1175, 1181.) "[S]ection 10851 does not proscribe theft, but rather taking or driving a vehicle with or without the intent to steal it." (*Ibid.;* [holding section 10851 conviction eligibility for resentencing under Proposition 47 depended on whether there was theft or nontheft factual basis].) The Supreme Court referred to its prior decision, *People v. Garza* (2005) 35 Cal.4th 866, 871, where it "recognized the distinction between the theft and nontheft forms of the . . . section 10851 offense." (*Page, supra,* 3 Cal.5th at p. 1183.) "In that case, we considered whether dual convictions under . . . section 10851 and Penal Code section 496, subdivision (a) (receiving stolen property) violated the statutory rule against convicting a person for both stealing and receiving the same property. We concluded the answer depended on the basis for the . . . section 10851 conviction—whether it was for stealing the automobile or for taking or driving it in another prohibited manner[.] . . . '[U]nlawful driving of a vehicle is not a form of theft when the driving occurs or continues after the theft is complete . . . . Therefore, a conviction under section 10851(a) for posttheft driving is not a theft conviction . . . .' [Citation.] The same is true when a defendant acted with intent only to deprive the owner *temporarily* of possession. Regardless of whether the defendant drove or took the vehicle, he did not commit auto theft if he lacked

---

[4] In this case, the prosecutor proceeded on the theory Robinson drove the vehicle solely with the intent to *temporarily*, not permanently, deprive the owner of title or possession.

16

the intent to steal. But if the defendant was convicted under . . . 10851[(a)], of unlawfully taking a vehicle with the intent to permanently deprive the owner of possession, he has, in fact, 'suffered a theft conviction.' [Citation.]" (*Ibid.*)

In *People v. Green* (1995) 34 Cal.App.4th 165, 179-180, the court considered whether the trial court should have instructed on joyriding, the lesser offense of section 10851. In that case, the trial court modified the jury instruction to remove any reference to *taking* the vehicle, requiring the jury to determine if defendant had the requisite mental intent to deprive the owner of possession, "based solely on the fact he was found driving the vehicle." (*Id.* at p. 176.) The appellate court concluded the trial court erred in failing to fully instruct "on all aspects of sections 10851(a) and 499b [joyriding]." (*Id.* at p. 179.)

In making this determination, the court in *Green* examined the many ways a jury could apply section 10851(a): "We believe the Legislature intended that the language of section 10851(a) *relating to driving* is to be applied under circumstances where: (1) the person either obtains lawful possession of the vehicle and thereafter forms the specific intent to deprive the owner of possession; or, (2) obtains the vehicle under circumstances which indicate the perpetrator has knowledge, absent his or her actual taking of the vehicle, that the use or operation of the vehicle is depriving the owner of possession of the vehicle. Had there been evidence appellant knew the vehicle had previously been stolen, it would have supported a finding of the second circumstance." (*Id.* at pp. 179-180.) The court in *Green* also considered whether there was substantial evidence for violation of section 10851(a). In listing the elements necessary for the offense, the court stated "knowledge that the vehicle was stolen is not an element of the offense. Such knowledge is merely one of various alternative factors evidencing an intent to deprive the owner of title and possession. [Citation.]" (*Id.* at p. 180.) In light of the above case authority, we conclude the court did not have a sua sponte duty to modify CALCRIM No. 1820 to add a "knowledge the vehicle was stolen" element to the crime.

17

Turning to the next layer of Robinson's argument, we are unpersuaded by his theory the court erred in giving CALCRIM No. 376. His argument is comprised of two parts. First, Robinson asserts the trial court revoked its promise to clarify CALCRIM No. 376 applied only to count 2, and gave an unmodified instruction stating it applied to both counts 1 and 2. We have reviewed the reporter's transcript and read it differently than Robinson.

Defense counsel asked the court to not give CALCRIM No. 376 because it was not "substantively useful to the jury." He argued evidence regarding Robinson's past convictions and Robinson's statements at the scene of the crime was "enough for a jury to make its own determination" and the instruction made a "confusing statement of the burden of proof." The prosecutor countered the instruction specifically related to count 2 (Pen. Code, § 496d [possession stolen property]).

The court ruled as follows: "It's appropriate that count 2 is a theft related crime . . . . I completely understand [defense counsel's] concern particularly . . . the second sentence, when it indicates, 'However, if you also find that supporting evidence tends to prove his guilt, you may conclude that that evidence insufficient to prove he committed counts 1 or 2.' [¶] I'm going to go ahead and give the instructions, but I am concerned about that language too. And I think—and I will be submitting something to the committee indicating that's very troubling because they're basically telling the jury what to do. And that's the challenge when you have these sorts of instructions. [¶] And so I first want to thank [defense counsel] for pointing that out, but I'll go ahead and give it." Thus, this portion of the transcript suggest the court was unwilling to omit or modify the instruction.

In response to the trial court's ruling, defense counsel asked if the instruction could it be given "as it relates to the [Penal Code section] 496 [offense]." The court responded, "And I will give it only as it relates to the [Penal Code section] 496 [offense]." We do not read this statement as a promise to modify the instruction. As

18

noted by the prosecutor, CALCRIM No. 376 *relates* to count 2 (Pen. Code, § 496d)). When the trial court's statement is read in context, it is apparent that the court was unwilling to omit or modify the instruction, wishing only to alert the judicial committee the instruction should be reviewed. This was a correct decision. The instruction does not improperly create a permissive inference of guilt.

As aptly noted by the Attorney General, this very same issue was considered in *O'Dell, supra,* 153 Cal.App.4th 1569, and *People v. Lopez* (2011) 198 Cal.App.4th 698 (*Lopez*). In both cases, defendant's burden of proof challenges to CALCRIM No. 376 were rejected.

In the *O'Dell* case, defendant asserted CALCRIM No. 376, violated his Sixth Amendment right to have each element of the charged offense proved beyond a reasonable doubt. (*O'Dell, supra,* 153 Cal.App.4th at p. 1573.) He argued the instruction shifted the burden to him and "permitted the jury to disregard defense evidence of innocent possession and permitted the jury to draw an impermissible inference of guilt without sufficient basis in fact." (*Id.* at p. 1574.) In that case, defendant was charged with unlawfully taking/driving a vehicle in violation of section 10851(a) and the court instructed the jurors with CALCRIM No. 376. The opinion does not suggest defendant was charged with any other theft-related crime, such as Penal Code section 496d.

The court examined the required elements for a section 10851(a) conviction, including defendant's intent to deprive the owner of possession. It reasoned knowledge the vehicle was stolen "may constitute evidence of the defendant's intent to deprive the owner of title and possession. [Citation.] [¶] Possession of recently stolen property itself raises a strong inference that the possessor knew the property was stolen; only slight corroboration is required to allow for a finding of guilt. [Citation.] This principle, applicable to theft offenses, applies as well to the unlawful driving of a vehicle.

19

[Citation.]" (*O'Dell, supra,* 153 Cal.App.4th at p. 1574.) It concluded, CALCRIM No. 376 instructed "in accordance with this principle." (*Ibid.*)

"The language of CALJIC No. 2.15, similar to CALCRIM No. 376 . . . [has been] repeatedly approved in the face of constitutional challenges. [Citations.] [¶] . . . The difference between the two instructions is that the CALCRIM instruction is easier to understand; it does not alter the underlying law in any way. [¶] Our Supreme Court has indicated that the slight corroboration that permits an inference that the possessor knew that the property was stolen may consist of no explanation, of an unsatisfactory explanation, or of other suspicious circumstances that would justify the inference. [Citation.]" (*O'Dell, supra,* 153 Cal.App.4th at pp. 1574-1575, fn. omitted.) The court rejected defendants' argument CALCRIM No. 376 should be given only in instances of unexplained possession of the stolen item. We agree with and adopt this court's well-reasoned analysis.

We find further support for the use of CALCRIM No. 376 in the *Lopez* case. That court considered and rejected a due process challenge to the instruction in the context of a burglary case. (*Lopez, supra,* 198 Cal.App.4th at p. 710.) It disagreed with defendant's contention the instruction's reference to "slight" supporting evidence reduces the prosecution's burden of proof. Robinson makes the same claim in this case. He is wrong.

"CALCRIM No. 376 makes it quite apparent that the 'slight' supporting evidence is not to be considered in isolation, but together with all of the other evidence for purposes of determining whether there is proof beyond a reasonable doubt that the defendant committed robbery. [Citation.] The instruction expressly requires the jury to be 'convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.' (CALCRIM No. 376.) Thus, CALCRIM No. 376 does nothing to diminish the prosecution's burden of proof. (See, e.g., *People v. Letner* (2010) 50 Cal.4th 99, 189 [CALJIC No. 2.15 contains no

20

suggestion that the jury need not find that all of the elements of the crime have been proved beyond a reasonable doubt].)" (*Lopez, supra,* 198 Cal.App.4th at p. 711.) The court rejected defendant's argument CALCRIM No. 376 was "reasonably susceptible of being misinterpreted to lower the prosecution's burden of proof concerning burglary, especially when that instruction is viewed in light of all of the court's instructions— specifically, CALCRIM No. 220, which requires the jury to find that the prosecution has proved the defendant guilty beyond a reasonable doubt." (*Id.* at p. 712.) In the case before us, the court gave the jurors CALCRIM No. 220. "'"We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions. [Citations.]" [Citation.]' [Citation.]" (*Id.* at p. 710.)

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.