Filed 11/22/22 P. v. Castaneda CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C094775 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF20204660) |
| v. | |
| MARCELINO RENE CASTANEDA, | |
| Defendant and Appellant. | |

A jury found defendant Marcelino Rene Castaneda guilty of one count of unlawfully taking or driving a vehicle (Veh. Code, § 10851 subd. (a)—count 1), two counts of misdemeanor possessing or making burglary tools (Pen. Code, § 466—counts 2 and 9),[1] one count of possession of a firearm by a person who has been convicted of a felony (§ 29800, subd. (a)(1)—count 4), two counts of possession of ammunition by a person prohibited from owning or possessing a firearm (§ 30305, subd. (a)—counts 5 and

---

[1] Undesignated statutory references are to the Penal Code.

1

11), one count of possession of methamphetamine while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)—count 6), one count of misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)—count 7), one count of misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a)—count 8), and one count of misdemeanor resisting or obstructing a peace officer (§ 148, subd. (a)(1)—count 12).[2] The jury also found that defendant committed count 11 while he was released from custody on bail or on his own recognizance. (§ 12022.1, subd. (b).)

Counts 1 and 2 related to events that occurred on November 10, 2020. Counts 3 through 9 related to events that occurred on December 22, 2020. Counts 1 through 9 were initially charged in case number 20-4660. Counts 11 and 12 were based on events that occurred February 2, 2021, and that were initially charged in case number 21-0258.[3] At the People's request, the court consolidated the two cases as to defendant.

In a bifurcated proceeding, the trial court found true that defendant had suffered a prior strike conviction.

The trial court sentenced defendant to a total prison term of 10 years and 8 months: six years for count 6 (the middle term of three years, doubled for the prior strike), plus one year and four months each on counts 1 and 11 (one-third the middle term, doubled for the prior strike), plus two years for the on-bail enhancement. The court imposed and stayed sentences on counts 4, 5, and 7 pursuant to section 654. The court also sentenced defendant to concurrent sentences of 180 days in county jail on counts 2, 8, 9, and 12.

---

[2] The People moved to dismiss count 3, and the count was dismissed.

[3] Count 10 was not alleged as to defendant.

On appeal, defendant argues: (1) the trial court's decision to consolidate resulted in gross unfairness to him in violation of his right to due process; (2) the trial court erred in not instructing with respect to count 1 that the vehicle had to be worth more than $950 to convict defendant of a felony under a temporary taking theory of the offense; (3) his conviction for count 1 was not supported by substantial evidence; (4) the trial court erred in not giving a unanimity instruction with respect to count 12; (5) the prosecutor committed misconduct during closing argument; (6) the cumulative prejudicial impact of the two instructional errors and prosecutorial misconduct requires reversal of his convictions; (7) his trial counsel rendered ineffective assistance in not asking the court to strike his prior strike; and (8) resentencing is required under recent amendments to section 1170. We agree the trial court erred in instructing the jury on count 1. Accordingly, we will reverse the Vehicle Code section 10851 conviction. On remand, the People will have the choice of either accepting the conviction's reduction to a misdemeanor or retrying the charge as a felony. Additionally, the People concede resentencing is required under amended section 1170. We will remand for resentencing consistent with this opinion. In all other respects, we will affirm the convictions.

## I. BACKGROUND

A. *November 10, 2020 (Counts 1 and 2)*

On November 10, 2020, a police officer for the City of West Sacramento saw a car matching the description of a stolen 2000 Honda Civic and pulled it over. Defendant was driving the car. The officer found shaved keys, a lock picking set, and bolt cutters inside the car.

B. *December 22, 2020 (Counts 3 through 9)*

On December 22, 2020, a different police officer received a notification of a stolen car coming into West Sacramento. The officer pulled over the car. Defendant was the driver, and there was also a passenger. Officers searched the car and found a loaded nine-millimeter handgun in a plastic bag under a purse in the front passenger area.

3

Officers also found a nine-millimeter firearm magazine, methamphetamine, a methamphetamine pipe, a ski mask, and shaved keys.

### C. February 2, 2021 (Counts 11 and 12)

On February 2, 2021, Detective Cameron was looking for Trenton McCarty, who was suspected of being a felon in possession of a firearm. Detective Cameron saw McCarty standing in front of a motel with a backpack. Defendant, who also had a backpack, approached McCarty. As other officers approached the two men, McCarty ran. Officer Lewis saw that McCarty was running and told defendant to sit down twice before chasing after McCarty. Defendant also ran away.

Officer Venikov followed defendant, detained him, and searched for the backpack defendant had been wearing earlier. Officers found the backpack in a parking lot between two vehicles. Inside the backpack, officers found an empty gun holster, an empty nine-millimeter magazine, a nine-millimeter magazine with ammunition in it, three hypodermic needles, a crowbar, and a set of keys.

## II. DISCUSSION

### A. Motion to Sever

#### 1. Trial Court Proceedings

Prior to trial, the People filed a motion to consolidate case No. 20-4660 with case No. 21-0258 and a third case that is not part of this appeal. Defendant opposed consolidation. The court held that it would consolidate case Nos. 20-4660 and 21-0258 as to defendant.

Defendant subsequently moved to sever counts 1 through 9 from counts 11 through 12, arguing, in part, that the People's case with respect to counts 3 through 9 was weaker than its case with respect to counts 11 and 12. The court denied defendant's motion to sever, explaining: "[E]ssentially what we have here, is related offenses, ammunition, and then later a firearm. But it's not that it's so far out there that it's bootstrapping a weak case to a strong case."

4

## 2. *Alleged Gross Unfairness*

Section 954, in relevant part, permits the joinder of "two or more different offenses connected together in their commission" or "two or more different offenses of the same class of crimes or offenses." Joinder conserves judicial resources and is therefore preferred by law. (*People v. Simon* (2016) 1 Cal.5th 98, 122.) Defendant does not dispute that the counts met the requirements for joinder. Nevertheless, the trial court may, "in the interests of justice and for good cause shown," sever the charges into groups to be tried separately. (§ 954.)

Review of a trial court's ruling on a motion to sever generally proceeds in two steps. "First, we examine whether, in light of the information available at the time, the trial court abused its discretion in denying" defendant's motion to sever. (*People v. Simon, supra*, 1 Cal.5th at p. 122.) " ' "The state's interest in joinder gives the court broader discretion in ruling on a motion for severance than it has in ruling on admissibility of evidence." ' [Citation.] Where, as here, the statutory requirements for joinder are met, the defendant must make a clear showing of prejudice to demonstrate that the trial court abused its discretion. [Citation.] [¶] In reviewing such a ruling, we consider: '(1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges; and (4) whether any charge carries the death penalty or the joinder of charges converts the matter into a capital case.' " (*People v. Holmes, McClain & Newborn* (2022) 12 Cal.5th 719, 746.) Defendant has effectively conceded the trial court did not abuse its discretion in denying his motion to sever by conceding the trial court did not abuse its discretion in consolidating the cases and not making any argument pertaining to the first, second, or fourth considerations.

5

Rather, defendant's argument is based on the case as tried and the second step of our analysis. Under the second step, even where a trial court "was well within its discretion in denying severance pretrial, we must also discern ' "whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to fair trial or due process of law." ' [Citation.] Whether joinder worked a gross unfairness turns upon assessing whether it was 'reasonably probable that the jury was influenced by the joinder in its verdict of guilt.' " (*People v. Vargas* (2020) 9 Cal.5th 793, 819.)

Defendant argues the trial court's decision to consolidate resulted in gross unfairness during his trial because the evidence supporting the counts involving gun possession on December 22, 2020, (counts 4 and 6) was weaker than the evidence supporting the count involving possession of ammunition on February 2, 2021, (count 11) because counts 4 and 6 relied on the doctrine of constructive possession. This argument is insufficient to demonstrate it is reasonably probable the jury was influenced by the joinder of the charges. "[A]s between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges." (*People v. Soper* (2009) 45 Cal.4th 759, 781.) "The core prejudice concern arising in connection with this issue is that jurors may aggregate evidence and convict on weak charges that might not merit conviction in separate trials. [Citation.] This concern is especially pronounced when evidence of a lesser but inflammatory incident might be used to bolster a weak prosecution case as to another incident. [Citation.] But even where evidence from one incident could be considered 'inflammatory' as the term is understood in our case law [citation], we will find no abuse of discretion if the evidence of guilt for each of the joined incidents is sufficiently compelling." (*People v. Simon, supra*, 1 Cal.5th at p. 127.) "Appellate courts have found

6

' "no prejudicial effect from joinder when the evidence of each crime is simple and distinct." ' " (*People v. Soper, supra*, at p. 784.) Here, the evidence of each crime was simple and distinct. Additionally, defendant notes the parties "vigorously disputed whether [defendant] was in constructive possession of the gun" during closing argument. The jury was instructed on the People's burden of proof and the requirements for each count including the requirements of proving possession. These instructions "mitigated the risk of any prejudicial spillover." (*Ibid.*) "Considering the proceedings as a whole, we conclude that defendant's trial was not grossly unfair." (*Ibid.*)

B.      *Unlawfully Taking or Driving a Vehicle (Count 1)*

Defendant was convicted in count 1 of violating Vehicle Code section 10851, subdivision (a), which prohibits driving or taking a vehicle without the owner's consent "with intent either to permanently or temporarily deprive the owner" of title or possession of the vehicle. (Veh. Code, § 10851, subd. (a).) Defendant raises two challenges to this conviction that relate to the value of the vehicle at issue. He argues we should reverse the count because: (1) the trial court did not instruct that the vehicle had to be worth more than $950 to convict defendant of a felony under a temporary taking theory of the offense; and (2) his conviction is not supported by substantial evidence that the vehicle was worth more than $950. Because both arguments require an understanding of the testimony regarding the value of the vehicle, we begin by summarizing this testimony.

1.      *Testimony Regarding Valuation of the Car*

On direct examination, the owner testified his car, a 2000 Honda Civic, was worth "a thousand dollars, around" at the time it was taken. On cross-examination, the owner was asked, "Is it fair to say that that could be plus or minus a couple hundred dollars?" The owner responded, "I don't know, maybe." The owner also testified that he bought the car for $1,000 in 2019. In the interim, the car had been stolen four times and repainted. The car had also been dented three times. The owner testified the car had

7

around 250,000 miles on it, and around 210,000 when he purchased it. On redirect, the owner explained he had purchased the car from a friend.

### 2. Instructional Error

The trial court instructed the jury, in relevant part:

"The defendant is charged in Count 1 with unlawfully taking or driving a vehicle in violation of Vehicle Code section 10851.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant took someone else's vehicle without the owner's consent;

"AND

"2. When the defendant took the vehicle, he intended to temporarily deprive the owner of possession or ownership of the vehicle;

"OR

"1. The defendant took someone else's vehicle without the owner's consent;

"AND

"2. When the defendant took the vehicle, he intended to permanently deprive the owner of possession or ownership of the vehicle;

"AND

"3. The vehicle was worth more than $950."

The jury was not instructed on posttheft driving under Vehicle Code section 10851. (See *People v. Page* (2017) 3 Cal.5th 1175, 1188 ["Posttheft driving in violation of Vehicle Code section 10851 consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession"].) Unlike posttheft driving, both a temporary and a permanent taking under Vehicle Code section 10851 must be punished as a misdemeanor if the vehicle is worth $950 or less. (*People v. Bullard* (2020) 9 Cal.5th 94, 99-100, 110.) Defendant argues, and the People concede, that the trial court erred in instructing on count 1 by omitting the element that the vehicle was worth more than $950 with respect

8

to a temporary vehicle taking.  We accept the People's concession and turn to the question of prejudice.

"When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded by statute on other grounds.)  The conviction "must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on [a] legally valid theory." (*Ibid.*)  Likewise, an instructional error in omitting an element of an offense is subject to the "beyond a reasonable doubt" standard articulated in *Chapman v. California* (1967) 386 U.S. 18, and will be deemed harmless only in unusual circumstances, such as where the element was undisputed, the defense was not prevented from contesting the omitted element, and overwhelming evidence supports the omitted element.  (*People v. Mil* (2012) 53 Cal.4th 400, 409, 414.)  "Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Id.* at p. 417.)

Here, there is no basis to conclude the jury relied upon permanent as opposed to temporary taking in convicting defendant of count 1.  The prosecutor argued both theories to the jury and noted the latter did not require a finding related to the value of the car.  Additionally, the value of the car was not uncontested or supported by overwhelming evidence.  The jury could have been persuaded by the testimony elicited during cross-examination that the People had not met their burden of proof.  Thus, we cannot conclude the trial court's instructional error was harmless beyond a reasonable doubt.

The remedy is to "reverse the felony conviction for unlawful driving or taking a vehicle and remand the matter to allow the People either to accept a reduction of the conviction to a misdemeanor or to retry the offense as a felony with appropriate

instructions." (*People v. Gutierrez* (2018) 20 Cal.App.5th 847, 857.) We will reverse defendant's conviction with respect to count 1 and remand accordingly.

        3.       *Substantial Evidence*

Defendant also argues we should reverse count 1 because it is not supported by substantial evidence. We disagree. Accordingly, defendant may be retried for the offense. (*People v. Franco* (2009) 180 Cal.App.4th 713, 726.)

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

On direct examination, the owner of the car testified that it was worth around $1,000 at the time it was taken. On cross-examination, defense counsel asked, "Is it fair to say that that could be plus or minus a couple hundred dollars?" and the owner responded ambiguously: "I don't know, maybe." We disagree with defendant's assertion this was an admission that the car could be worth $800 or less. The jury could have found this statement and the other evidence regarding the condition of the vehicle insufficient to undermine the owner's assessment during direct examination that the car was worth around $1,000. Accordingly, we must conclude defendant's conviction was supported by substantial evidence and retrial on count 1 is permitted.

*C.      Unanimity Instruction (Count 12)*

Defendant was convicted in count 12 of resisting or obstructing a peace officer (§ 148, subd. (a)(1)).  Defendant argues we must reverse this conviction because the court committed instructional error and violated his state and federal constitutional rights by not giving a unanimity instruction on this count.  We disagree.

The jury was instructed with respect to count 12 that the People had to prove:

"1. [Officer] Lewis was a police officer lawfully performing or attempting to perform his duties as a police officer;

"2.      The defendant willfully resisted, obstructed, or delayed [Officer] Lewis in the performance or attempted performance of those duties;

"AND

"3.      When the defendant acted, he knew, or reasonably should have known, that [Officer] Lewis was a police officer performing or attempting to perform his duties."

Although section 148, subdivision (a)(1) is most often applied to the physical acts of a defendant, such as physical resistance, hiding, or running away from a peace officer (*In re Muhammed C*. (2002) 95 Cal.App.4th 1325, 1329), it also applies to "passive delay or obstruction of an arrest, such as refusal to cooperate" (*People v. Curtis* (1969) 70 Cal.2d 347, 356, fn. 6).  For example, in *In re Muhammed C*., the appellate court concluded that "a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car."  (*In re Muhammed C., supra*, at p. 1330.)

Officer Lewis testified that, on February 2, 2021, he saw defendant and McCarty outside of a motel, each carrying backpacks.  McCarty was beginning to flee, so Officer Lewis told defendant to sit down twice, and then he and Officer Montez chased after McCarty.  Officer Lewis testified that defendant never had a seat.

11

Instead, defendant ran away. Officer Venikov testified to following defendant while he was running away. Officer Venikov stopped defendant, detained him in a police car, and then searched for defendant's backpack.

Officer Lewis testified that he returned to the motel to help Officer Venikov after he found McCarty's firearm and the other officers had found defendant and his backpack.

The jury was played a video from Officer Venikov's body camera that showed Officer Venikov asking defendant to get out of the car, and defendant initially refusing and talking back to Officer Venikov. Officer Venikov testified this video was taken after the backpack was found.

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty. [Citation.] There are, however, several exceptions to this rule. For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when the statute contemplates a continuous course of conduct of a series of acts over a period of time' [citation]. There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)

Defendant argues "the People offered evidence of two separate and distinct acts to support a single charge of resisting arrest: (1) when the police first arrived on the scene, and appellant ran way [*sic*] when told by Officer Lewis to have a seat as Officer Lewis and Officer Montez chased after McCarthy; and (2) when appellant was inside the police car, and stalled and talked back to Officer Venikov while Officer Venikov tried to search him." Defendant argues the two acts were separated by time and space because the first

12

occurred against Officer Lewis when the police first arrived on the scene, and the second act occurred against Officer Venikov inside and outside the police car after defendant was already handcuffed, arrested, and seated inside the police car. Defendant has failed to establish any error in not giving a unanimity instruction because the jury instructions required the jury to base its conviction on an act that "resisted, obstructed, or delayed [*Officer*] *Lewis* in the performance or attempted performance of" his duties, and defendant has not demonstrated there were multiple separate and distinct acts of resistance as to Officer Lewis. (Italics added.) (See *People v. White* (1980) 101 Cal.App.3d 161, 169, fn. 3 [explaining that where the information does not specify which officer was the victim of a section 148 charge, "the jury must specifically be instructed as to the officer involved to assure a defendant, if convicted, that the jury has reached a unanimous verdict"].) We conclude no unanimity instruction was required because, as indicated by the jury instructions, the People elected to proceed based on defendant's disregarding Officer Lewis's instruction to sit and then running away.

### D.    *Alleged Prosecutorial Misconduct*

Defendant argues the prosecutor committed prejudicial misconduct during closing arguments by inciting the jury to render a guilty verdict based on fear of being adversely judged by their family members if they acquitted defendant. We disagree.

#### 1.    *Closing Argument*

During her rebuttal, the prosecutor argued:

"And now I just want to comment a little bit on reasonable doubt. . . . [I]t's a concept that we don't use very much in everyday life, but it's not insurmountable, it's not unobtainable. It's not something—I'll try to give an example that will hopefully put it kind of in a tangible—a little bit more tangible form for you. And keep in mind that it's the same standard that's used in every single case; every DUI that happens across the country and every murder case is decided using the standard of proof beyond a

13

reasonable doubt. And jurors convict people accused of crimes every day using that standard.

"So, you know, you've been ordered since you've been on jury duty not to talk to anybody about the case, and I'm sure you're going home . . . to your loved ones every night and they're probably a little bit curious, and you probably kind of want to talk to them about it and . . . kind of decompress from your day. But you can't do it because you can't talk to anybody about what you've been doing all day. And so think about when you finally do reach a verdict and you get to go home and you finally get to tell your loved one what you've been doing this week and what the case was about. Think about what you're going to tell them. Are you going to tell them there's this guy that was arrested by the West Sacramento Police Department on three separate occasions and he was accused of having a gun and ammunition, but he didn't have any of that, he didn't know anything, he was innocent. Are you going to tell your loved ones that?

"[Defense Counsel]: Objection, improper argument.

"THE COURT: Not yet. May be approaching the threshold of going overboard.

"Go ahead, Counsel.

"[Prosecutor]: . . . [Y]ou're not going to tell them that. You're going to go home and you're going to describe this case to your family and say it was evidence about a guy who was arrested by the police department. He had a stolen car. And then on another day, he had a gun and some ammunition and some drugs. And on the third day, he had more ammunition, ammunition that fit or was the same caliber as the gun he had had on a previous occasion.

"Or think about when . . . maybe you meet with a family reunion this summer. You get together with some family and . . . you guys are talking and they kind of are interested in like, Hey, what's been new, what have you been doing? And you'll tell them, Oh, hey, I served on a jury. I had jury duty, and actually was a juror on a criminal trial. And they might be interested and say, Oh, well, tell me about that. So think about

14

what you are going to tell your family when you see them . . . midsummer, maybe people you haven't seen in a while. Are you going to tell them there was this innocent guy that got arrested and targeted by the police department for having a gun that he didn't know about, or having ammunition he didn't know about? No. That's not how you're going to describe this case. You're going to tell them that there's this guy who was arrested on three separate occasions for having a stolen car, for having a gun, for having ammunition, and having drugs."

### 2. *Analysis*

"When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated. Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury. [Citation.] 'To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury.' [Citation.] There are two exceptions to this forfeiture: (1) the objection and/or the request for an admonition would have been futile, or (2) the admonition would have been insufficient to cure the harm occasioned by the misconduct. Forfeiture for failure to request an admonition will also not apply where the trial court immediately overruled the objection to the alleged misconduct, leaving defendant without an opportunity to request an admonition. A defendant claiming that one of these exceptions applies must find support for his or her claim in the record. [Citation.] The ritual incantation that an exception applies is not enough." (*People v. Panah* (2005) 35 Cal.4th 395, 462.) Here, defendant did not expressly invoke any exceptions. Nonetheless, we conclude defendant's claim is without merit.

15

" 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1337.) Additionally, " '[t]he prosecutor has a wide-ranging right to discuss the case in closing argument. He has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper.' " (*People v. Panah, supra*, 35 Cal.4th at p. 463.) We agree with the People that the prosecutor's comments were attempting to explain, in the context of the reasonable doubt standard, how the jurors would be able to explain their conclusions in the future using evidence. We disagree with the defendant's assertion that the prosecutor's comments incited the jury into rendering a guilty verdict based on the fear of being adversely judged by their families if they acquitted. The prosecutor's argument was rooted in evidence rather than fear.

Defendant's argument relies primarily on *People v. Hail* (1914) 25 Cal.App. 342, in which this court found misconduct where the prosecutor argued, " 'Men have been acquitted who have committed cold-blooded murder, and if you were to acquit this man under the testimony here you would be allowing a cold-blooded murderer with human gore yet dripping upon his hands to go unwhipt of justice; gentlemen, you cannot do it, you will not do it. *Should you do it you would be afraid to go out on the street and meet your fellow-men.*' " (*Id.* at pp. 356-357.) This court explained, "That the effect of the statement that the jurors, in the event that they acquitted the defendant, would be afraid to go out upon the public streets and meet their fellow-men, was to intimidate or influence them to return a verdict of conviction, regardless of their views as to the effect of the evidence, cannot for a moment be doubted." (*Id.* at p. 357.) Further, this court stated, "The language complained of amounts, substantially, to a direct declaration to the jury

16

that, if they did not convict the defendant, they would lose the respect and confidence of their friends and neighbors. Thus the question of the honesty and the integrity of the jury was injected into the case. In other words, the jurors themselves were put upon trial by the district attorney, and whether they could bravely meet their fellow-citizens and face them with clear consciences was made by that official to depend upon whether they found the defendant guilty." (*Id*. at p. 358.) The prosecutor's arguments in this proceeding were not analogous to those made in *Hail*. We find no prosecutorial misconduct.

E.    *Alleged Cumulative Error*

Defendant alleges the cumulative prejudicial impact of the alleged instructional error and prosecutorial misconduct necessitates reversal of his convictions. We have found only one error, instructional error with respect to count 1, and we have reversed the conviction on that count. There is no additional error to cumulate.

F.    *Sentencing*

As set forth above, in August 2021, the trial court sentenced defendant to a total prison term of 10 years and 8 months: six years for count 6 (the middle term of three years, doubled for the prior strike), plus one year and four months each on counts 1 and 11 (one-third the middle term, doubled for the prior strike), plus two years for the on-bail enhancement. On appeal, defendant argues, and the People concede, the matter must be remanded for resentencing pursuant to amended section 1170. We accept the People's concession.

At the time of defendant's sentencing, section 1170, subdivision (b) provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Stats. 2020, ch. 29, § 14.) This provision was amended effective January 1, 2022, and divided into subparts. (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(1) provides "the court shall, in its sound discretion, order imposition of a sentence not

17

to exceed the middle term, except as otherwise provided in paragraph (2)." The referenced exception provides that an upper term sentence may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."[4] (§ 1170, subd. (b)(3).) Additionally, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense," including "(B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6).) A youth under section 1016.7 is "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).)

"[T]he amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Further, defendant argues, and the People concede, that because defendant was 25 at the time of the offenses, he is entitled to resentencing in light of the new low-term presumption. We accept this concession and remand for resentencing consistent with this opinion. (See *ibid.* ["Undisputedly, defendant was under age 26 when he committed this crime. Accordingly, we agree with the parties that

---

[4] "This paragraph does not apply to enhancements imposed on prior convictions." (§ 1170, subd. (b)(3).)

18

under section 1170, subdivision (b), defendant's six-year midterm sentence must be vacated"].)

As defendant notes, we need not address his claim that his trial counsel rendered ineffective assistance by not asking the court to strike his prior strike. Defendant will already receive a full resentencing based on the recent amendments to section 1170 and our reversal of count 1. During that resentencing, the trial court may reconsider all sentencing choices previously made. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258.) Defendant may ask the trial court to strike the prior strike finding at that time.

### III. DISPOSITION

The conviction for unlawful taking or driving of a vehicle under Vehicle Code section 10851 is reversed, the sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion. On remand, the People may elect to accept a reduction of the Vehicle Code section 10851 conviction to a misdemeanor, in which case the trial court is to resentence defendant, or to retry him for a felony violation of Vehicle Code section 10851. The remaining convictions are affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
DUARTE, Acting P. J.

/S/

_____
EARL, J.